AMERICAN PHARMASEAL, Plaintiff-Appellee, v. TEC SYSTEMS, Defendant-Appellant.

Second District   No. 2—86—1098

Opinion filed October 30, 1987.

Snyder, Clarke, Dalziel & Johnson, of Waukegan (Julian Johnson, of counsel), for appellant.

William T. Cahill, of Phelan, Pope & John, Ltd., of Chicago (Mary K. Kelly, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, American Pharmaseal, brought a products liability action against defendant-appellant, TEC Systems (TEC), and three other defendants for property damages resulting from an explosion and fire at plaintiff's plant in March 1982. The fire began when fumes passing through a pollution control device (called an after-burner) manufactured by TEC ignited, causing a flashback fire and explosion. The afterburner was designed to dispose of volatile fumes generated by a laminating machine used in plaintiff's business, and the two machines were connected by a series of ducts. The other defendants were: GFG Corporation (GFG), manufacturer of the laminator; Fredriksen & Sons Fire Equipment Company (Fredriksen), the supplier of plaintiff's fire suppression system; and Greg Thomas Heating and Cooling (Greg Thomas), which installed the ductwork.

On March 3, 1986, the first day of trial, plaintiff settled with Greg Thomas and Fredriksen and filed its third amended complaint against the remaining defendants, TEC and GFG, over TEC's objection. The court gave the defendants until March 10 to file their answers. The parties stipulated orally to the amount of plaintiff's damages, from which they agreed they would deduct any damages attributed by the jury to plaintiff's conduct, and then the settlement amounts. The following day, plaintiff settled with GFG and filed a written version of the stipulation, signed by plaintiff and TEC, which plaintiff had corrected to include the amount of its settlement with GFG.

On March 10, after the close of plaintiff's case, TEC filed its an-

swer, including new affirmative defenses to plaintiff's breach of warranty counts. The court struck the affirmative defenses on plaintiff's motion, finding that TEC should have raised the issues in its earlier pleadings and that the new defenses unfairly surprised the plaintiff. Plaintiff then withdrew two of its four claims against TEC and requested that only count I, alleging strict liability in tort, and count IV, alleging breach of an implied warranty of fitness for a particular purpose, be submitted to the jury. The jury found for plaintiff on both claims, but, on the strict liability count, it found plaintiff responsible for 28% of its damages based on TEC's assumption of the risk defense. The court entered judgment against TEC in the amount of $155,234 on the strict liability claim, and in the amount of $215,603 on the breach of warranty claim.

TEC raises the following arguments on appeal: (1) the court erred in determining the amount of TEC's liability on count I by reversing the agreed order of deductions from plaintiff's damages, *i.e.*, by deducting the settlement amounts before deducting · plaintiff's 28% comparative liability; (2) the court erred in striking TEC's affirmative defenses; (3) the court erred in deleting TEC's warranty disclaimer before submitting the parties' purchase contract to the jury; and (4) TEC's assumption of the risk defense should have applied equally to plaintiff's breach of warranty claim.

## I

We turn first to TEC's argument that the parties had stipulated not only to the amount of plaintiff's damages, but to the manner in which the ultimate judgment was to be calculated. The text of the stipulation filed by plaintiff is as follows:

> "The parties have agreed that as a result of the explosion and fire in the coater-laminator/afterburner system, American Pharmaseal sustained damages in the amount of $395,603. In the event that judgment is entered against ~~one or both of~~ the defendants, the parties agree that the court shall enter judgment in the amount of $395,603 minus any amounts assessed against American Pharmaseal for comparative negligence, then minus ~~$130,000~~ $180,000 previously received by American Pharmaseal as settlement of its claim against defendants." (Corrections made in original.)

The judgment entered by the court on count I of the complaint (to which the plaintiff's comparative liability applied) was apparently calculated by deducting the settlement amounts before deducting plaintiff's comparative liability, as follows:

| | |
|---|---|
| $395,603.00 | stipulated damages |
| -180,000.00 | less settlement amounts |
| $215,603.00 | |
| -60,368.84 | less 28% attributable to |
| | plaintiff's conduct |
| $155,234.16 | amount of judgment |

TEC filed a post-trial motion challenging, among other things, the court's disregard for the stipulated method of calculating damages. TEC contends that the stipulation required the amount of judgment to be calculated as follows:

| | |
|---|---|
| $395,603.00 | stipulated damages |
| -110,768.84 | less 28% attributable to |
| | plaintiff's conduct |
| $284,834.16 | |
| -180,000.00 | less settlement amounts |
| $104,834.16 | |

After hearing oral arguments on the issue, the trial court concluded that the parties had not intended the result TEC claims, and that TEC had not adequately supported its contention that the stipulation should be applied literally. It then considered conflicting decisions cited by the parties on the issue of whether a reduction in damages for a plaintiff's comparative fault should properly precede a deduction for settlement amounts received from other defendants. It concluded that the reasoning of the Michigan Supreme Court in *Rittenhouse v. Erhart* (1985), 424 Mich. 166, 380 N.W.2d 440, was persuasive in its holding that settlement amounts must be deducted first.

■ ■ A stipulation is an agreement made by the parties with regard to business before the court (see *Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1), and which may concern or resolve any matter involving the stipulating parties' individual rights. (See, *e.g., Swank v. Bertuca* (1976), 41 Ill. App. 3d 229, 231; *Central Illinois Public Service Co. v. Badgley* (1974), 24 Ill. App. 3d 294, 298.) Courts generally favor stipulations that are designed to save costs or to settle or simplify litigation (*Swank v. Bertuca* (1976), 41 Ill. App. 3d 229, 232; *Central Illinois Public Service Co. v. Badgley* (1974), 24 Ill. App. 3d 294, 298) and will enforce them against parties who have assented unless the stipulation is shown to be "unreasonable, the result of fraud or violative of public policy." (*Commonwealth Edison Co. v. Department of Local Government Affairs* (1984), 126 Ill. App. 3d 277, 293; *In re Marriage of Brand* (1984),

123 Ill. App. 3d 1047, 1051; *Catholic Bishop v. Village of Justice* (1980), 84 Ill. App. 3d 827, 832.) However, while parties may bind themselves by stipulation, they "cannot bind a court by stipulating to a question of law or the legal effect of facts." *Domagalski v. Industrial Com.* (1983), 97 Ill. 2d 228, 235; *People v. Saunders* (1985), 135 Ill. App. 3d 594, 604.

■ The stipulation in issue here indicates that the parties agreed to the amount of plaintiff's damages and the aggregate amount of plaintiff's settlements with other parties. The stipulation appears to go farther, however, directing the court as to how it must assess the amount of judgment based on those stipulated facts and any comparative fault the jury might attribute to the plaintiff. That direction in effect purports to bind the court to the legal result the parties have determined must follow from their stipulated facts. In *People v. Levisen* (1950), 404 Ill. 574, 578-79, our supreme court stated that "a stipulation as to the legal conclusions arising from facts is inoperative. The court cannot be controlled by agreement of counsel on a related question of law." We believe that, to the extent that it purports to direct the manner in which judgment should be awarded, the stipulation invades the province of the trial court, and we conclude that the court properly disregarded it.

TEC argues that, even disregarding the stipulation, plaintiff's damages must first be reduced to the extent attributable to plaintiff's assumption of the risk to give full effect to comparative fault principles. Relying on California and Washington decisions (*Lemos v. Eichel* (1978), 83 Cal. App. 3d 110, 147 Cal. Rptr. 603; *Scott v. Cascade Structures* (1983), 100 Wash. 2d 537, 673 P.2d 179), TEC argues that if plaintiff is permitted to deduct the settlement amounts first, the amount that it may not recover due to its own conduct will be less than the percentage the jury apportioned to it. We agree. Using plaintiff's approach, plaintiff may recover a total of $335,234.16 on its strict liability claim ($155,234.16 judgment against TEC plus $180,000 settlement), or 84.7% of its damages. The jury, however, attributed 28% of the damages to plaintiff's conduct, thereby authorizing its recovery of only 72% of the damages. See *Lemos v. Eichel* (1978), 83 Cal. App. 3d 110, 118, 147 Cal. Rptr. 603, 606-07.

Plaintiff's approach (deducting the settlement amounts first), adopted in a comprehensive decision by the Michigan Supreme Court in *Rittenhouse v. Erhart* (1985), 424 Mich. 166, 380 N.W.2d 440, and followed by the trial court below, is simply not appropriate under Illinois law. The *Rittenhouse* court consolidated three cases, in each of which one or more tortfeasors had settled with the plaintiffs. The

nonsettling defendants in each case claimed that the juries' assessment of plaintiffs' comparative liability must be deducted from the damages before the settlement amounts. (424 Mich. 166, 172-76, 380 N.W.2d 440, 441-43.) The court concluded that there was a fundamental flaw in the nonsettling defendants' approach—they had assumed that the juries had assessed plaintiffs' comparative fault by comparing plaintiffs' conduct with that of all possible tortfeasors. "Rather, the juries only weighed the responsibility of the plaintiffs as to the defendants at trial. It would thus be inaccurate to reduce plaintiffs' total damages by a percentage which only applies to the trial parties and not all tortfeasors." (*Rittenhouse v. Erhart* (1985), 424 Mich. 166, 178, 380 N.W.2d 440, 444. But see *Rittenhouse v. Erhart* (1985), 424 Mich. 166, 181, 380 N.W.2d 440, 456 (Riley, J., dissenting) (noting that the juries had been instructed to assign a percentage to plaintiff's fault based on the *"total combined negligence which caused the plaintiff's injury"*) (emphasis in original).) The court conceded that subtracting the settlement amounts first would not give the optimum result in all cases (because settling parties may under- or overcompensate for the damages they in fact caused), but concluded that this approach would more fairly allocate the remaining damages between the plaintiff and nonsettling defendants commensurate with the way the jury had allocated fault between them. 424 Mich. 166, 178-80 n.3, 380 N.W.2d 440, 444-45 n.3.

The Missouri Court of Appeals recently reached the same conclusion in *Jensen v. ARA Services, Inc.* (Mo. App. 1986), 719 S.W.2d 121. The *Jensen* court held that settlement amounts must be deducted first because, in Missouri, fault is apportioned only among the parties at trial; the verdict form "does not allow the jury to allocate fault between the plaintiff and the combined group of those who injured her." *Jensen v. ARA Services, Inc.* (Mo. App. 1986), 719 S.W.2d 121, 124.

■ In Illinois, however, a plaintiff's comparative fault is assessed with respect to the conduct of all who contributed to the injury whether or not they are parties to the lawsuit. "Consideration of the negligence of both parties and nonparties to an action is essential for determining liability commensurate with degree of total fault. *** The purpose of considering the liability of nonparty tortfeasors is *** to determine the extent of plaintiff's responsibility for his own injuries." (*Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1064.) The comparative fault assigned to a plaintiff by an Illinois jury, therefore, should accurately reflect the percentage of plaintiff's overall damages actually attributable to plaintiff's own

conduct.

■■ The jury in the instant case returned a verdict form containing the following language:

> "Assuming that 100% represents the total combined responsibility of the plaintiff and of the defendant and of other persons for plaintiff's damages, we find that the percentage attributable solely to plaintiff's assumption of risk that was a proximate cause of plaintiff's damage is 28 percent (%)." (Modified Illinois Pattern Jury Instructions, Civil, No. A45.06 (2d ed. Supp. 1986).)[1]

The jury inserted 28 as the appropriate figure. We must conclude that the jury evaluated plaintiff's conduct in relation to that of TEC and all *other persons*, as the verdict form indicates. There was expert testimony at trial indicating that a damper installed in the ductwork by Greg Thomas was seriously defective and that Fredriksen's fire suppression system was not functional due to faulty wiring. In fact, plaintiff's expert testified on cross-examination that of five specific problems in the system, only one was directly attributable to TEC's afterburner. The jury therefore had ample evidence before it with regard to the contributory conduct of the settling defendants.

We note additionally that we cannot accept plaintiff's contention that deducting the settlement amounts first will encourage settlements under Illinois law, because it is based on the incorrect assumption that Illinois juries compare only the relative conduct of the plaintiff and trial defendants. For example, under newly enacted section 2—1116 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—1116), a plaintiff may not recover for any of its damages if its contributory fault accounted for more than 50% of the proximate cause of the injury or damage. If plaintiff's assumption is correct, the statute will serve as *a strong disincentive* for Illinois plaintiffs to settle unless they can settle with all defendants, because, with the elimination of each potential trial defendant, plaintiff's proportionate fault with respect to the remaining defendants would rise, perhaps bringing it dangerously close to exceeding 50%. The new statutory scheme therefore heavily depends on the ju-

---

[1]The verdict form quoted is a modified version of the standard form applicable where a plaintiff's contributory negligence is in issue. The standard verdict form must ordinarily be accompanied by IPI Civil, No. A45.05, a similarly worded jury instruction. (*Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 133.) We note that the jury was not given the companion instruction. However, because plaintiff did not tender the instruction, it has waived any possible objection to its omission. See, *e.g.*, *Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 567.

ry's ability to evaluate plaintiff's conduct with regard to all persons, whether or not they are parties to the suit.

We believe that the jury evaluated plaintiff's comparative liability with respect to all causative conduct, and we conclude that its verdict can therefore most accurately be given effect by deducting plaintiff's comparative liability from its overall damages *before* deducting the settlement amounts. We therefore hold that the trial court erred in calculating the judgment amount and reduce the damage award on count I to $104,834.16.

## II

All of TEC's remaining arguments relate, directly or indirectly, to the trial court's alleged error in striking TEC's affirmative defenses to the breach of warranty counts. TEC essentially contends that, because the court allowed plaintiff to file an amended complaint, it was obligated to permit TEC to file an answer to it, including new affirmative defenses, notwithstanding plaintiff's having closed its case in the meantime.

■■ ■ It is true that, where a plaintiff files an amendment of substance to its complaint, the defendant must be afforded an opportunity to answer the amended complaint. (See *Wende v. Chicago City Ry. Co.* (1915), 271 Ill. 437, 442; *Bauer Grocer Co. v. Zelle* (1898), 172 Ill. 407, 413; *Kiser v. Kiser* (1946), 329 Ill. App. 23, 27; *Dahlin v. Maytag Co.* (1925), 238 Ill. App. 85, 88-89.) Where the amendment is immaterial, however, a defendant has no absolute right to file a new answer. (61A Am. Jur. 2d *Pleading* sec. 332 (1981); *cf. Meyer v. Meyer* (1912), 255 Ill. 436, 440 (finding no error in the trial court's having entered judgment on an amended bill without requiring the defendant to answer, where the amendment did not change or expand the cause of action or the relief sought).) Plaintiff's third amended complaint differed from the second only in that it rearranged the claims within the complaint and added more specific allegations of actions or omissions by TEC; it did not raise new claims or issues or seek additional or different relief. TEC's answer, by contrast, injected two new theories into its defense of the warranty counts: (1) that TEC had disclaimed all warranties except those stated in the purchase contract; and (2) that plaintiff had been contributorily negligent in its use of the afterburner. The answer also incorporated for the first time allegations that plaintiff had misused the afterburner and had not adopted recommended safety measures. We do not believe that the trial court, by permitting TEC to file an answer to plaintiff's amended complaint, authorized TEC to file a

pleading substantially different from its earlier answers if the changes were not necessitated by any new or different claims by plaintiff. In effect, TEC did more than meet the changes made by plaintiff—it affirmatively amended its answer to plaintiff's second amended complaint, and we will treat the court's striking of TEC's affirmative defenses as a refusal to permit an amendment to TEC's pleadings.

It is within a trial court's sound discretion to permit or refuse an amendment to pleadings, and its decision will not be reversed on appeal absent a clear abuse of discretion. (See, *e.g.*, *DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 681; *Dick v. Gursoy* (1984), 124 Ill. App. 3d 185, 187.) Factors to be considered in evaluating the court's exercise of discretion include the timeliness of the proposed amendment and whether other parties have been prejudiced or surprised by the amendment. (*DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 681; *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 377.) TEC contends that plaintiff could not have been surprised or prejudiced by its disclaimer defense because one or more of the other defendants who settled with plaintiff had raised the same or a similar defense. We disagree. Plaintiff had not had the opportunity to prepare for a disclaimer defense by TEC, and therefore had not sought or interviewed potential witnesses, nor had it presented evidence on the issue during its case. Moreover, TEC has offered no satisfactory explanation for its failure to raise these defenses during the four-year period this litigation was pending prior to trial. We find unconvincing TEC's contention that it had been alerted just before trial by our supreme court's decision in *Casey v. Baseden* (1986), 111 Ill. 2d 341, that contributory negligence is an affirmative defense. This does not explain TEC's failure to raise its disclaimer of warranty defense at an earlier time, or its failure to plead earlier to the warranty counts, as it had to the strict liability count, that plaintiff had misused the product and failed to adopt safety measures suggested by TEC.

In *DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 681-82, this court reversed a trial court's decision permitting an amendment to defendant's answer. In that case, as in this one, the defendants had not raised the disputed issue over the extended course of litigation, raising it for the first time at the close of plaintiff's case. (141 Ill. App. 3d 675, 682.) And, as here, the defendants were unable to give any good reason for their oversight. (141 Ill. App. 3d 675, 682; see also *Tate v. Coonce* (1981), 97 Ill. App. 3d 145, 148 (finding no error in the court's refusal to permit adding a new

affirmative defense on the day of trial); *United Airlines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 858 (approving a trial court's refusal to permit an amendment to the answer after plaintiff had presented its motion for summary judgment); *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396 (holding that amendments during or on the eve of trial ought not to be permitted if they concern matters known to the pleader at the time of the original pleading and if no good reason is offered for their not having been filed at that time).) We conclude that the trial court did not abuse its discretion in striking the new affirmative defenses, raised for the first time after the close of plaintiff's case, from TEC's amended answer. We therefore must also find no error in the trial court's removing TEC's disclaimer from the materials submitted to the jury, as the language may have confused the jury and was not relevant to any issue in the case. See, *e.g., Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 358; *Reynolds v. Alton & Southern Ry. Co.* (1983), 115 Ill. App. 3d 88, 97.

■■ We reject TEC's final argument that its assumption of the risk defense ought to have been applied to the breach of warranty claim in the same manner that it was applied to the strict liability count. TEC admits that no Illinois case has yet decided whether a plaintiff's assumption of the risk may be used as a partial defense to a breach of warranty claim. TEC additionally admits that it did not expressly plead assumption of the risk as an affirmative defense to the breach of warranty counts but argues that its factual allegations denying specific paragraphs of plaintiff's complaint sufficiently raised the issue. We find it unnecessary to determine whether or not the defense was properly raised in TEC's final pleading because, even so, it was raised for the first time as to the warranty counts after the plaintiff had closed its case. We find no error in the court's refusal to permit defendant to add a unique and unprecedented defense theory after the close of plaintiff's case. We therefore affirm the trial court's award on plaintiff's breach of warranty claim.

We reduce the damage award on count I to the amount of $104,834.16 and affirm the judgment as modified, and in all other respects.

Judgment modified and affirmed.

DUNN and WOODWARD, JJ., concur.