ANNETTE COSTA, Indiv. and as Special Adm'r of the Estate of Dominic Costa, Deceased, Plaintiff-Appellant, v. DRESSER INDUSTRIES, INC., *et al.*, Defendants-Appellees.

Third District   No. 3—93—0642

Opinion filed November 18, 1994.

2

James Walker, of James Walker, Ltd., of Bloomington, for appellant.

James R. Carter, of Carter & Rasmussen, of Peoria, for appellees Dresser Industries, Inc., and E.D. Bullard Company.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, for appellee A.P. Green Industries, Inc.

Daniel L. Schmidt, of Hafele, Schmidt, Stephens & Glancy, of Peoria, for appellee Sprinkmann Sons Corporation.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff-appellant, Annette Costa, appeals from a judgment entered in favor of the defendants-appellees, A.P. Green Industries, Inc., Sprinkmann Sons Corporation of Illinois, E.D. Bullard Company, Dresser Industries, Inc., Magid Manufacturing Company and Fibreboard Corporation. This appeal (No. 3—93—0642) was consolidated for oral argument with appeals brought by Owens-Corning Fiberglas Corporation and Keystone Steel & Wire Company (Nos. 3—93—0621 and 3—93—0625) which are disposed of in a companion opinion.

The plaintiff brought an action contending her husband, Dominic Costa, an employee of Keystone from 1961 to 1987, died of mesothelioma as a result of exposure to asbestos-containing products manufactured, sold or used by the defendants. As more fully explained in the companion opinion, a judgment on liability was entered against Owens-Corning for failure to produce a corporate witness. Finding the decedent did not die of mesothelioma, the jury found for all defendants other than Owens-Corning.

On appeal, the plaintiff contends statements made in opening argument by attorneys for Fibreboard and A.P. Green concerning notes written by the decedent prior to his death, which were subsequently not offered into evidence by the defendants, were so prejudicial as to require a new trial.

While counsel in opening statements may summarily outline what he expects the evidence admissible at trial will show, no statement may be made in opening statement which counsel does not intend to prove or cannot prove. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 246 N.E.2d 269.) The general rule as to statements made by counsel in opening statement that certain evidence will be introduced is that such statements are not improper if made in good faith and with reasonable grounds to believe that the evidence is admissible. *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 360 N.E.2d 1324.

During opening arguments attorneys for A.P. Green and Fibreboard referred to notes written by the decedent or his daughter in

which the decedent described the asbestos-containing products he used or was exposed to at work. According to the defendants, after the plaintiff had presented her case and some of the defense's medical testimony had been presented to the jury, the defendants determined they did not need to offer the notes. Interestingly, we note the plaintiff herself attempted to offer these very same notes which the trial court ruled were inadmissible.

■ The plaintiff has made no showing that defendants acted in other than good faith at the time the statement was made. The plaintiff's actions illustrate that even she had a good-faith belief the notes were admissible. The plaintiff also fails to show how she was prejudiced by these remarks. In fact, the plaintiff tried to use the nonproduction to her advantage by commenting on it in closing argument.

The plaintiff asserts the trial court erred in admitting the expert testimony of Dr. Hans Weill because of the defendants' failure to comply with the requirements of Supreme Court Rule 220 (134 Ill. 2d R. 220).

The record shows that in August 1990, the plaintiff served interrogatories on defendant E.D. Bullard Company. Interrogatory No. 10 asked for the identity of any expert witnesses who might testify at trial. The interrogatory also requested information along the lines found in Rule 220(c)(1) (134 Ill. 2d R. 220(c)(1)). Bullard responded that to date it had not retained any Rule 220 experts.

On May 1, 1992, Bullard disclosed the identity of three potential experts, including Weill. On June 12, 1992, in response to certain court rulings, Bullard voluntarily informed the plaintiff that Weill might be called to render opinions "regarding chrysotile fiber and there [sic] action as a causative agent of mesothelioma." Bullard indicated to plaintiff that in its view the plaintiff had never submitted interrogatories pursuant to Rule 220 and that it was under no obligation to supplement the interrogatories propounded in 1990.

In response, the plaintiff wrote to Bullard that interrogatory No. 10 was a Rule 220 interrogatory and that Bullard was under a duty to supplement its answer to that interrogatory under Rule 220(c)(3) (134 Ill. 2d R. 220(c)(3)). Continuing to maintain that plaintiff had not propounded any interrogatories under Rule 220, Bullard further disclosed on June 30, 1992, that if called to testify, Weill would present testimony "regarding the carcinogenic differences of different types of asbestos fibers in relationship to cancers, particularly mesotheliomas."

Thereafter, the plaintiff moved to quash the evidence deposition of Dr. Weill noticed by Bullard. In denying the motion the trial court

found that plaintiff had not submitted interrogatories pursuant to Rule 220. Weill was not deposed. During the trial, the plaintiff moved to quash the opinion testimony of Weill based on Bullard's failure to properly supplement the answer to interrogatory No. 10. The motion was denied. Dr. Weill testified that in his opinion the decedent's tumor was a bronchogenic carcinoma and not a mesothelioma.

In general, Rule 220 requires that the identity of expert witnesses be disclosed prior to trial. (See 134 Ill. 2d R. 220(b).) Upon disclosure, the expert's opinions may be the subject of discovery as provided in Rule 220(c). (134 Ill. 2d R. 220(c).) Rule 220(c)(3) requires a party to "seasonably" supplement answers to interrogatories submitted under Rule 220. 134 Ill. 2d R. 220(c)(3).

Rule 220 was adopted with the hope of eliminating situations wherein either a trial must be continued, or an expert's late or surprise testimony is permitted to the opponent's prejudice or refused to the detriment of the offering party, resulting in reversible error and remand for a new trial. *Sohaey v. Van Cura* (1994), 158 Ill. 2d 375, 634 N.E.2d 707.

■ In the instant case, we find the trial court correctly allowed the expert testimony of Dr. Weill. Bullard identified Weill as a potential expert in May 1992, some four months prior to trial. For whatever reason, after disclosure the plaintiff refused to submit interrogatories pursuant to Rule 220(c)(1) and insisted that one of the interrogatories included with general interrogatories propounded under Rule 213 nearly two years before was a Rule 220 interrogatory. The plaintiff maintained Bullard had a duty to supplement its answer to interrogatory No. 10. (There is no ongoing duty to supplement interrogatories submitted under Rule 213. (See 134 Ill. 2d R. 213(e)).)

Despite the plaintiff's failure to serve Rule 220 interrogatories, Bullard disclosed a summary of Dr. Weill's qualifications and what he would testify to at trial. Bullard noticed up Weill's deposition which the plaintiff opposed. The plaintiff can in no way claim she was surprised or prejudiced by Weill's testimony. She was given every opportunity to discover the opinions of Weill prior to trial.

The plaintiff also argues that Weill was allowed to give opinions at trial beyond those previously disclosed. Under Rule 220(d) the testimony of an expert may not go beyond the facts and opinions disclosed in discovery. (134 Ill. 2d R. 220(d).) Again, the plaintiff had every opportunity to discover in depth the opinions of Dr. Weill. In addition, we note the plaintiff did not raise any objection to the scope of Weill's testimony at trial.

The plaintiff argues the trial court erred in preventing her from

discovering the test results and opinions held by at least one consulting expert retained by the defendants.

The record shows that in August 1990, at the urging of the trial court, the defendants agreed to a joint testing of the tissue samples from the lungs of the decedent. The plaintiff had apparently raised objections that there was not enough material for each of the defendants to do separate testing. At the trial court's urging, it was agreed that General Refractories (a defendant at the time) and Keystone would each receive five grams of tissue to do testing on. Assumedly, the defendants would share the results of any testing done among themselves. There was apparently no move or request by the plaintiff at the time to require the plaintiff's representative be present at any testing or that the results be turned over to the plaintiff.

Subsequently, the plaintiff was ordered to turn over slides and other materials. According to the plaintiff, these items were also inspected and/or tested by the defendants' expert. Both pretrial and during the trial the plaintiff attempted through various methods to force the defendants to divulge the identity of this expert, the results of any testing done by the expert and any opinions formed by the expert. The trial court denied the plaintiff's attempts to elicit this information, finding the expert was a consulting expert within the meaning of Rule 220(a) (134 Ill. 2d R. 220(a)).

The plaintiff contends the trial court failed to protect her interest in allowing the defendants to do testing of tissue samples without disclosing the expert or experts who did the testing and the results. The plaintiff cites cases in which the trial court put certain restrictions and disclosure requirements on the physical testing of evidence. (See, e.g., Sarver v. Barrett Ace Hardware, Inc. (1976), 63 Ill. 2d 454, 349 N.E.2d 28.) However, in the case before us, the plaintiff never sought any type of restrictions or safeguards at the time the tissue samples were ordered turned over.

Plaintiff does not challenge the trial court's finding that the alleged expert was a consulting expert within the meaning of section 220(a). She argues the expert's identity and opinions were discoverable because "exceptional circumstances" existed in this case. The plaintiff contends the defendants were "tissue shopping" the decedent's tissue to various experts and that the jury was never informed that the results were consistent with the findings of Dr. Yasunosuke Suzuki, the plaintiff's expert. The plaintiff asserts the jury was misled as to the decedent's condition and that the jury had a right to know the extent of any disagreement between the experts consulted by the defendants.

Under Rule 220(c)(5) the identity, opinions and work product of

consulting experts are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means. 134 Ill. 2d R. 220(c)(5).

■ In the instant case, the plaintiff has made no showing that it was impracticable for her to obtain opinions on what disease process caused her husband's death. She was able to do any testing she wished. There was apparently more than sufficient tissue sample to do testing on. There is no showing that the tissue turned over to the defendants in 1990 was somehow unique. The plaintiff was able to obtain the opinion of Dr. Suzuki that the decedent died of mesothelioma, which refuted the testimony of the defendants' testifying experts that the decedent died of bronchogenic carcinoma.

Second, there is no evidence of "tissue shopping" on the part of the defendants. The plaintiff makes a completely unsupported assumption that the consulting expert's findings were consistent with those of Dr. Suzuki. In sum, we find no error.

The third issue on appeal has its origins to some extent in the previously discussed contention regarding consulting experts. The day after the court ruled the defendants had no obligation to disclose their consulting witnesses, the plaintiff strenuously objected to a video-taped deposition of Dr. Thomas Colby. (Like many other things, depositions and other discovery-type matters took place during the course of the trial.) The plaintiff asserted Dr. Colby was a consulting witness and warned him not to disclose "privileged" matters.

Before the trial court and now on appeal, the plaintiff argues Colby was never disclosed as an expert witness and thus it was error to allow the jury to view the deposition of Colby.

The record reveals that when Dr. Daudur Rahman, one of the decedent's treating physicians, was deposed in April 1992, he opined the decedent had suffered from an undifferentiated large cell carcinoma. At the time, it was noted that Dr. Allen Campbell's autopsy report indicated a malignant fibrous histiocytoma. In the summer of 1992, the plaintiff's attorney, James Walker, contacted Dr. Rahman and inquired about further tests to help determine a "definitive diagnosis of the cell of origin." Walker agreed to pay for the additional studies. Walker reiterated this suggestion in July 1992, when he realized the defendants were going to call Rahman to testify that the decedent did not have mesothelioma.

In late July 1992, Rahman contacted Dr. Colby at the Mayo Clinic in Minnesota. Rahman asked Colby to review slides, wet tissue and other materials and give his opinion on the nature of the malignancy. Colby opined "an anaplastic spindled and giant cell carci-

noma" caused the decedent's death. Although in his testing he found two asbestos bodies, he did not see evidence of asbestosis. Noting a difference of opinion on the issue, Colby stated he ascribed to the school holding that bronchogenic carcinoma cannot be attributed to asbestos exposure in the absence of asbestosis.

Rahman was further deposed on August 31, 1992. (The trial commenced on September 21, 1992, after numerous days spent hearing pretrial motions and selecting a jury.) In that deposition, apparently without any objection raised by the plaintiff, Rahman disclosed that he had recently consulted Dr. Colby. The defendants then sought an authorization from the plaintiff allowing disclosure of records and reports from the Mayo Clinic and Colby. As stated above, Colby's deposition was video-taped on September 26, 1992, and subsequently shown to the jury. The trial court found that Colby was not a Rule 220 expert.

The plaintiff argues Colby was her consulting witness; therefore, if the defendants need not disclose their consulting witnesses, Colby was not subject to discovery and it was error to admit his testimony. The parties also dispute whether Colby was a "treating physician."

The Illinois Supreme Court stated in *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, 610 N.E.2d 77: "[T]he question of whether a witness must be disclosed as an expert under Rule 220 depends on the expert's relationship to the case. If the expert is intimately involved in the underlying facts giving rise to the litigation and he would reasonably be expected to form an opinion through that involvement, then disclosure is not required. In such a case, the opposing party is unlikely to be surprised by the testimony. On the other hand, where the expert's contact *** is slight, or where the opinion rendered is unrelated to the expert's involvement in the case, then disclosure is required." (*Wakeford*, 154 Ill. 2d at 549, 610 N.E.2d at 80.) In making this determination, the supreme court subsequently said *Wakeford* emphasized the witness' relationship and the context in which the expert's opinions arose. *Boatman's National Bank v. Martin* (1993), 155 Ill. 2d 305, 614 N.E.2d 1194.

In the instant case, the trial court correctly determined Colby was not a Rule 220 expert. The defendants did not retain Colby as an expert witness. Colby was retained by the plaintiff in an apparent attempt to challenge or change the diagnosis and opinions of Dr. Rahman. Rahman inadvertently disclosed the identity of Colby shortly before the trial commenced. The defendants moved diligently to depose Colby.

None of the concerns which prompted Rule 220 were present in this case. The plaintiff can claim no surprise since she sought and

obtained the opinion of Colby in the first place. She requested that the treating physician seek this consultation with Colby. Through this involvement it would be reasonably expected that Colby would form an opinion on the cause of the decedent's death. Under these circumstances, Colby would not be a Rule 220 expert.

In any event even if there was error, such error was harmless, as Colby's testimony for the most part was cumulative to the testimony of the decedent's treating physicians and the defendants' other experts.

We also find no error in the trial court's decision to refuse the rebuttal testimony of Dr. Hans Stroink offered by the plaintiff. The record shows the plaintiff retained Stroink during the course of the trial to test tissue samples for the presence of epithelial mucin. The presence of mucin was an issue because its presence is a factor which rules out a diagnosis of mesothelioma. In the plaintiff's case in chief, Dr. Suzuki's tests were negative for the presence of the substance. The defendants' witness, Dr. Rahman, also found no mucin in the samples he tested. However, Dr. Colby did find mucin. This finding factored into the opinion of Colby and Rahman that the decedent did not have mesothelioma.

In rebuttal, the plaintiff attempted to call Stroink. The defendants moved *in limine* to bar the testimony, which the trial court granted finding Stroink was an expert witness not properly disclosed pursuant to Rule 220.

Stroink was clearly an expert retained by the plaintiff for purposes of trial. He was retained solely by the plaintiff for purposes of rebuttal testimony. We find plaintiff's attempt to compare Stroink with the circumstances surrounding the admission of the testimony of Weill and Colby completely meritless.

■ In addition, we find no merit to plaintiff's implied contention that Stroink's testimony was needed to rebut expert testimony on mucin. The question of the presence or absence of mucin was discussed during testimony of Dr. Suzuki. Thus, the plaintiff raised the issue in her case in chief and the testimony presented by the defendants on the issue was in response to that evidence. We are not presented with a case in which the defendants raised some new point in their case in chief to which the plaintiff would have a right to present rebuttal. See *Hoem v. Zia* (1994), 159 Ill. 2d 193, 636 N.E.2d 479.

The trial court refused to admit into evidence certain medical articles on asbestos hazards. The court found they were hearsay. The plaintiff asserts this was error.

The admissibility of evidence rests within the sound discretion of

the trial court. (*Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 576 N.E.2d 918.) The hearsay rule prohibits introducing into evidence an out-of-court statement, written or oral, that is offered for the truth of the matter asserted therein. (*Kochan v. Owens-Corning Fiberglas Corp.* (1993), 242 Ill. App. 3d 781, 610 N.E. 2d 683.) A party is generally prohibited from introducing medical treatises as substantive evidence. See *Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793.

■ Here, the plaintiff attempted to offer medical articles on asbestos as substantive evidence. These were not being offered to impeach a witness or as the basis of an expert's opinion. Nor did the plaintiff contend the defendants had ever received these articles such as to constitute notice. (See *Kochan v. Owens-Corning Fiberglas Corp.* (1993), 242 Ill. App. 3d 781, 610 N.E.2d 683.) The articles were hearsay and properly excluded.

The plaintiff also raises a number of issues concerning the jury instructions. The plaintiff contends the trial court erred in giving a special interrogatory which stated: "Do you find that Dominic Costa died from the disease of mesothelioma?" The jury answered "No" to this question. The plaintiff argues the question of whether the decedent died of mesothelioma is a mere evidentiary fact to which a special interrogatory is improper.

A special interrogatory must address a material question of fact, *i.e.,* an ultimate fact upon which the rights of the parties depend. *Meister v. Henson* (1993), 253 Ill. App. 3d 619, 625 N.E.2d 404.

■ We find no error in the giving of this instruction. The issue of whether the decedent died of mesothelioma was a question of ultimate fact. The plaintiff's entire case was premised on her claim that the decedent died of mesothelioma as a result of asbestos exposure. One of the main defenses raised to her claim was that he died of bronchogenic carcinoma unrelated to asbestos exposure. Thus, a jury finding that the decedent did not die of mesothelioma would be dispositive of the plaintiff's claim.

The plaintiff maintains the trial court erred in giving a non-Illinois Pattern Jury Instruction (IPI) telling the jury, "Evidence that a defendant's product was merely present at a work site where the plaintiff [*sic*] worked is insufficient to establish exposure to that product." The plaintiff argues the instruction is an incorrect statement of law and invaded the province of the jury. Defendant A.P. Green tendered the instruction asserting it was supported by the supreme court's holding in *Thacker v. UNR Industries, Inc.* (1992), 151 Ill. 2d 343, 603 N.E.2d 449.

In *Thacker*, the court adopted the "frequency, regularity and

proximity" test wherein the plaintiff must show the injured worker was exposed to the defendant's asbestos through proof that he regularly worked in an area where the defendant's asbestos was frequently used, and the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product. Although the statement tendered as an instruction by A.P. Green may be literally true and readily implied under the test now adopted by the supreme court, nowhere in the opinion does the above-quoted language appear. The statement assumes a question the supreme court may not necessarily have reached in *Thacker*. Second, our courts have taken a dim view of "culling passages from opinions and incorporating them into instructions." See *People v. Bush* (1993), 157 Ill. 2d 248, 256, 623 N.E.2d 1361; *De Rosa v. Albert F. Amling Co.* (1980), 84 Ill. App. 3d 64, 404 N.E.2d 564.

■ Although we view the giving of this instruction as erroneous, we hold under the circumstances the error was harmless. Given the jury determined the decedent did not die of mesothelioma, it was not necessary to consider the issue of whether, and to what extent, the decedent was exposed to asbestos-containing products. The instruction could have no effect on the jury's decision.

■ The plaintiff also argues the trial court erred in refusing to give three tendered instructions. Tendered plaintiff's instructions Nos. 25 and 27 stated, respectively:

"A manufacturer is held to the knowledge and skill of an expert. A manufacturer's status as expert [*sic*] means that at a minimum it must keep abreast of scientific knowledge, discoveries, and advances and is presumed to know what is imparted thereby. A manufacturer has a duty to test and inspect its product. The extent of research and experiment must be commensurate with the dangers involved. A product must not be made available to the public without disclosure of those dangers that the application of reasonable foresight would reveal. Nor may a manufacturer rely unquestionably on others to sound the hue and cry concerning a danger in its product. Rather, each manufacturer must bear the burden of showing that its own conduct was proportionate to the scope of its duty."

"A manufacturer is held to the degree of knowledge and skill of experts."

In *Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793, this court held that an instruction very similar to plaintiff's No. 27 was incomplete and thus the trial court correctly refused it. The court found the instruction invited "total speculation" as to what the standard of expert care might be. Therefore, based on

*Fornoff* the trial court in the instant case correctly refused to give instruction No. 27.

However, the plaintiff relies on a comment in the *Fornoff* case in arguing the trial court erred in refusing instruction No. 25. The *Fornoff* court stated that had the tendered instruction been complete, *i.e.*, delineated what the expert standard of care entailed, it would have been error to refuse it. The plaintiff argues instruction No. 25 defined the standard of care for an expert and thus under *Fornoff* it was error to refuse the instruction.

We note the language of instruction No. 25 is lifted nearly verbatim from a 1973 opinion out of the Court of Appeals for the Fifth Circuit. (See *Borel v. Fibreboard Paper Products Corp.* (5th Cir. 1973), 493 F.2d 1076, 1089.) As previously stated, the practice of lifting sentences from opinions of the courts of *this State* is not encouraged. Instruction No. 25 utilizes language from a Federal court of appeals interpreting Texas substantive law. Thus, the dangers of misstating the law are even greater. In addition, the language of the proposed instruction is highly prejudicial and inflammatory. The trial court correctly refused to give the instruction.

The trial court also rejected the following non-IPI instruction tendered by the plaintiff: "You are instructed that in the plaintiff's case against the defendants, Dresser, Bullard, A.P. Green and Magid, the Court has determined as a matter of law that Dominic Costa had asbestos disease as early as April, 1987."

The record shows the trial court ruled that some of the plaintiff's causes of action were barred by the applicable statute of limitations. In interrogatories, the plaintiff had stated that the decedent "first became aware of the connection between asbestos exposure and his disease when cancer was diagnosed on April 7, 1987." The court ruled the date constituted discovery of the action sufficient to commence the running of the statute of limitations. The plaintiff maintains the result of the court's ruling on the statute of limitations issue was a finding that the decedent had asbestos disease and operates to collaterally estop further consideration of the issue.

There is absolutely no merit to this contention. The plaintiff cites no authority in support of her assertion. The court's ruling on the statute of limitations was premised on facts which, *if true*, would have put a person on notice that he or she had a cause of action. It did not constitute a judicial finding that the decedent did in fact have an asbestos-related condition.

The plaintiff contends the trial court erred in refusing to allow her to amend her pleadings to add the words "or lung cancer."

Allowing amendments to pleadings is within the trial court's

14

discretion and will not be reversed absent a clear abuse of discretion. (*Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 537 N.E.2d 1332.) Factors to consider in deciding whether to allow the amendment include the timeliness of the motion and prejudice to the opposing party. *American Pharmaseal v. TEC Systems* (1987), 162 Ill. App. 3d 351, 515 N.E.2d 432.

█ In the instant case, the plaintiff made the motion to amend after the close of evidence. For four years the defendants had been defending against a mesothelioma claim, asserting, *inter alia*, that (1) the decedent had lung cancer and (2) the cancer was not related to asbestos exposure. During those fours years, the plaintiff had steadfastly maintained the decedent died of mesothelioma. The plaintiff's motion was not only untimely, but highly prejudicial to the defendants. As the trial court noted in denying the motion, had the plaintiff pursued a lung cancer theory, the defendants would have defended the case differently. In addition, there was no evidence in the record to show a connection between the decedent's lung cancer and asbestos exposure.

In sum, we find nothing raised by the plaintiff on appeal merits a reversal and remand for a new trial.

There is one other issue raised by the plaintiff on appeal. Following the trial, the plaintiff filed a motion for sanctions under Supreme Court Rule 137 (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 137, eff. February 1, 1994) against defendant A.P. Green and its attorney, Christopher Larson. Following a hearing, the motion was denied. The premise of the motion was that Green and its attorney allegedly withheld documents and then made false statements in opening argument and in response to Rule 237(b) requests.

As mentioned above, the parties, and in particular the plaintiff, pursued what in all but name was discovery during the course of the trial. This, despite the fact that they had four years to pursue discovery and prepare for trial. This controversy arises out of such discovery.

On the eve of trial, the plaintiff filed a Rule 237(b) request which requested, *inter alia*, "The records of sales or shipments of products by A.P. Green to Keystone Steel & Wire Co. during the period 1960-1987." A.P. Green responded. "This information has previously been provided to plaintiff's counsel."

During opening statements on September 21, 1992, Larson stated that Green had reviewed its records and found no sale of asbestos-containing products to the Keystone plant in *Bartonville.* On September 23, 1992, during trial, a hearing was held on objections

filed in response to plaintiff's Rule 237(b) request. Green raised objections to some of the other requests contained in the motion. At the hearing, the plaintiff asserted Green had not complied with the above-stated request. After some discussion, the court stated that Green could supplement its response. Subsequently, Green provided records of sales to the *Bartonville* plant and affidavits again asserting no sale of asbestos-containing products to that plant.

On October 6, 1992, the plaintiff served a second Rule 237(b) request against Green requesting "all records of sales or shipments of products by A.P. Green to Keystone Steel & Wire Co. *Peoria,* Illinois, during the period 1960-1987." (Emphasis added.) At the hearing held that day to quash the request, Green pointed out that requests for information filed before the August Rule 237(b) request had specifically asked for records for the *Bartonville* plant. This was the first specific request for records from the *Peoria* address. The court indicated it understood the origin of the misunderstanding and found no attempt on either side to "sandbag." The court ordered Green to produce the records for the *Bartonville* and *Peoria* plants by noon on October 8. (We note the plaintiff rested her case in chief on October 14, 1992.) The plaintiff filed her motion for sanctions one month after the jury returned a verdict in favor of Green.

A trial court's determination regarding a motion for sanctions is a matter within the court's discretion and will not be disturbed absent an abuse of that discretion. *Wittekind v. Rusk* (1993), 253 Ill. App. 3d 577, 625 N.E.2d 427.

We find no abuse of discretion on the part of the trial court. The record indicates the discovery prior to the commencement of the trial concerned the Bartonville plant. The August 1992 request did not specify a site. Then, while the trial was proceeding, the plaintiff, apparently for the first time, requested records from the Peoria Keystone plant. It is clear the plaintiff's request for sanctions was absolutely meritless.

For the forgoing reasons, the judgment of the circuit court of Peoria County in case No. 3—93—0642 is affirmed.

Affirmed.

McCUSKEY and BRESLIN, JJ., concur.