GLENN H. BEAMAN *et al.*, Plaintiffs-Appellants, v. SWEDISH AMERICAN HOSPITAL ASSOCIATION OF ROCKFORD *et al.*, Defendants-Appellees.

Second District   No. 2—88—0205

Opinion filed February 1, 1989.

Bruscato & Cacciatore, of Rockford (John R. Truitt and William T. Cacciatore, of counsel), for appellants.

Diane I. Jennings and Hugh C. Griffin, both of Lord, Bissell & Brook, of Rockford (Jeffry S. Spears, of counsel), for appellee Swedish American Hospital Association of Rockford.

Holmstrom & Green, P.C., and Diane I. Jennings and Hugh C. Griffin, both of Lord, Bissell & Brook, both of Rockford (Gregory P. Guth and Jeffry S. Spears, of counsel), for appellee Warren L. Lowry.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Glenn H. Beaman, sought damages for injuries allegedly sustained as the result of the medical malpractice of defendants, Dr. Rudolph Vedo, Dr. Warren L. Lowry, and Swedish American Hospital Association of Rockford. Plaintiff's wife, Donna J. Beaman, filed a loss of consortium claim. The trial court granted Dr. Vedo's motion for summary judgment based on the ground that there was no expert testimony to show a deviation from the required standard of care of an anesthesiologist. This ruling was not appealed. The jury returned a verdict in favor of Dr. Lowry and the hospital on all remaining counts. On appeal, plaintiffs contend that the trial judge erred by refusing to allow plaintiffs' treating physicians to give expert testimony as to a causal connection between the spinal anesthesia and plaintiff's ill health.

On March 19, 1979, plaintiff was admitted to Swedish American Hospital for urinary retention. A history was taken, at which time plaintiff stated that he had flu-like symptoms for the past nine days and had experienced tingling and pain in his thighs and lower back. A catheter was inserted, and plaintiff was scheduled to undergo prostate surgery on March 22, 1979. Dr. Lowry performed the surgery. Plaintiff testified that on the day following surgery he experienced a numbness in his feet and could not properly walk. This condition persisted when plaintiff left the hospital, and he was later examined by several other physicians as his condition became worse. His condition was eventually diagnosed as being myelopathy (a dysfunction of the spinal cord), although the cause was undetermined.

On March 17, 1983, plaintiffs filed a complaint alleging medical malpractice. The trial court, pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220), set a time limit for the parties to disclose their expert witnesses. Plaintiffs identified Dr. Murray Rosenberg, an anesthesiologist, as their only trial expert. Dr. Rosenberg testified at the discovery deposition that plaintiff's condition was caused by an improper positioning of the plaintiff on the operating table. Approximately 11 months later, plaintiffs again identified Dr. Rosenberg as their only trial expert and also listed plaintiff's treating physicians as those who would testify to plaintiff's care and treatment based on their examinations and findings. During his second deposition, Dr. Rosenberg reiterated his earlier opinions and added that plaintiff's condition may have been caused by a viral infection such that the surgery should not have been performed at that time. Plaintiffs also disclosed the two treating physicians (Drs. Copeland and Campbell) who would testify.

One month before the trial date, and after the discovery cutoff date, plaintiffs filed additional Rule 220 answers which stated that Dr. Rosenberg would testify that plaintiff's condition may have been caused by the spinal anesthesia. Plaintiffs also stated that Dr. Campbell would testify as to the possible link between the anesthesia and plaintiff's condition. Both defendants filed a motion to bar new opinions of plaintiffs' experts, and the motion was granted. The trial court noted that plaintiffs had not previously disclosed any expert testimony concerning this liability theory concerning spinal anesthesia, and to allow such a theory at this late date would "severely prejudice the defendant."

The trial judge also heard motions *in limine*, and determined that he would not allow any new liability theories to be presented at trial. The court also refused to allow any hypothetical questions directed to the treating physicians without first obtaining court authorization. Plaintiffs filed a motion to reconsider the trial court's ruling, arguing that treating physicians were not experts under Rule 220, and thus the disclosure requirement does not apply. This motion was denied. On October 28, 1987, the jury returned a verdict in favor of both defendants. Plaintiffs' motion for a new trial was denied.

■ On appeal, plaintiffs contend that the trial court committed reversible error by refusing to allow plaintiffs' treating physicians to testify as experts in a medical malpractice action. Plaintiffs make this claim by stating that the treating physicians did not come within the purview of Rule 220, and thus there was no need to comply with Rule 220. That rule provides:

"In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party ***." (107 Ill. 2d R. 220(b)(1).)

The rule defines an expert witness as:

"[A] person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." 107 Ill. 2d R. 220(a)(1).

■ Plaintiffs primarily rely on *Diminskis v. Chicago Transit Authority* (1987), 155 Ill. App. 3d 585, 508 N.E.2d 215, for the proposition that treating physicians are not considered to be experts within the meaning of Rule 220. The Illinois Supreme Court affirmed the *Diminskis* decision in *Tzystuck v. Chicago Transit Authority* (1988),

124 Ill. 2d 226, 235, 529 N.E.2d 525. The supreme court noted that there is an inherent difference between a treating physician and a medical expert. A treating physician is consulted to specifically treat a patient's mental or physical problem. A medical expert is retained simply to render testimony at trial. (*Tzystuck*, 124 Ill. 2d at 234.) The court reasoned that a treating physician should be treated similar to an occurrence witness because the treating physician witnesses the events that form a part of the subject matter of the litigation.

Plaintiffs correctly state that both Dr. Campbell and Dr. Copeland were consulted for the purpose of rendering medical treatment. They were not retained to provide expert testimony at trial. This is especially true considering that both were consulted long before the malpractice complaint was filed. Thus, under the *Tzystuck* and *Diminskis* rules, there was no need for plaintiffs to comply with Rule 220 as to these treating physicians.

Neither defendant has asserted that treating physicians fall within the purview of Rule 220 when they testify as to matters from their own personal knowledge. Both defendants objected to the possibility that plaintiffs would use the treating physicians as experts to circumvent Rule 220 requirements. The court ruled that there could not be any hypothetical questions asked of the treating physicians without prior approval of the court. The judge stated that this would be done on a question-by-question basis.

■ In a medical malpractice action, the plaintiff must prove (1) the proper standard of care against which the defendant's conduct is measured; (2) a negligent failure to comply with the applicable standard of care; and (3) a resulting injury proximately caused by this breach of the applicable standard of care. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 297, 529 N.E.2d 552.) In general, the plaintiff must present expert opinion to establish each of these elements. (*Addison*, 124 Ill. 2d at 297.) Plaintiffs claim that the trial court did not allow them to meet their burden of proof in this case because they were not allowed to elicit expert opinions from the two treating physicians. As a result, plaintiffs state that they were severely prejudiced and deprived of a fair trial. Plaintiffs primarily rely upon *Corrales v. American Cab Co.* (1988), 170 Ill. App. 3d 907, 524 N.E.2d 923, for the proposition that a trial court's erroneous decision to bar treating physicians' testimony will require a new trial. In *Corrales*, defendant attempted to call a treating physician to the stand to testify as to certain statements plaintiff made in the emergency room. The trial court refused to allow the testimony pursuant to Supreme Court Rules 220 and 237 (notice of appearance of witnesses at trial).

The appellate court reversed, holding that in a closely balanced case, the trial court's ruling severely prejudiced defendant and required a new trial. *Corrales*, 170 Ill. App. 3d at 911-12.

■ Plaintiffs assert that the trial court in both *Corrales* and our case improperly barred the treating physicians' testimony. We disagree. The trial court in *Corrales* refused to allow the treating physician to testify because the physician was undisclosed. This factor is not present in our case. There is no dispute that both treating physicians were disclosed in our case. The trial judge, in this case, also allowed both physicians to testify, unlike *Corrales*. The only limitation the trial judge placed on the testimony was that neither treating physician could testify about theories of liability which were not at issue in the case. The trial court placed this limitation on plaintiffs to prevent them from introducing a new theory of medical negligence so close to the trial date.

The trial court did not preclude expert testimony; it only precluded irrelevant expert testimony. It is proper for a trial judge to exclude evidence which is not relevant to the specific issues under consideration. (*Schultz v. Richie* (1986), 148 Ill. App. 3d 903, 907, 499 N.E.2d 1069.) Plaintiffs have misconstrued the trial court's ruling and continue to misstate the nature and extent of the trial court's ruling in argument presented to this court. Prejudice for failure to allow testimony into evidence does not occur when the testimony is irrelevant. A review of portions of the deposition of Dr. Campbell attached to plaintiffs' motion to reconsider lends credence to this court's determination that plaintiffs miscomprehend the nature of this case.

Plaintiffs claim that the trial court erred in barring this testimony and such error deprived plaintiffs of a fair trial. We disagree. Plaintiffs represent to us that the trial judge found such testimony to be violative of Rule 220 and was thus excluded. However, a reading of the post-trial motion transcripts indicates that the trial court did not allow the testimony because such testimony involved a new theory of liability. The trial judge stated:

> "I simply don't see it as a Diminiskis [*sic*] issue. I think the fundamental principal [*sic*] here is that the defendants are entitled to know well in advance what they are accused of, what they have to defend against.
>
> I believe the posture of the discovery, as it unfolded with the defendants' 220 interrogatories and the answer to those, clearly identifies the theories of liability as being two theories, a mispositioning of the patient and operating on the patient at

a time when infection might have been ongoing. There was simply in my opinion no expert testimony established—ever establishing liability on the part of the hospital or Dr. Lowry for negligent anesthesia process, and that was the basis for the Court's ruling that the plaintiffs will not be permitted at a late date to resurrect a theory of liability on the part of the hospital and doctor without some expert testimony having been identified in advance that would have notified those defendants that they were going to be defending against that."

The resurrection the trial court alludes to is the summary judgment granted the anesthesiologist, Dr. Vedo. The summary judgment is tantamount to an adjudication of the anesthesia theory as to the other two defendants as well. Such an anesthesia theory was never raised at any time against the defendant hospital. In fact, as early as 1983, defendants requested plaintiffs to provide the names of any treating physicians who would testify as to any negligent acts the defendants were responsible for. Plaintiffs furnished no information other than "investigation continuing." Defendants received similar responses well into 1987.

Plaintiffs also assert that the trial court improperly barred the expert opinions of all other treating physicians of plaintiffs. However, plaintiffs did not make an offer of proof as to who these other physicians were and what their testimony would have been. An adequate offer of proof requires plaintiffs to provide this information or the issue is waived on appeal. *Piano v. Davison* (1987), 157 Ill. App. 3d 649, 668, 510 N.E.2d 1066; *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022.

It is the opinion of this court that plaintiffs were not denied their right to a fair trial. The trial judge did not abuse his discretion by (1) requiring plaintiffs to submit any hypothetical questions that were to be asked of the treating physicians to the court before asking the questions, or (2) refusing to allow testimony concerning spinal anesthesia as an additional theory of liability. This is especially true given the fact that plaintiffs requested the opportunity to present this theory long after the discovery period had concluded and less than one month before the trial was set to commence. The trial judge properly limited the theories of liability to (1) whether defendants mispositioned plaintiff on the operating table such that plaintiff's myelopathy resulted, and (2) whether defendants should have postponed the operation as a result of plaintiff's viral infection. Therefore, the judge correctly ruled that evidence concerning the connection between the spinal anesthesia and plaintiff's myelopathy was simply

not relevant because spinal anesthesia was not a theory of liability in the case.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

WOODWARD and REINHARD, JJ., concur.