LEONA COCHRAN, Plaintiff-Appellee, v. THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC., Defendant-Appellant.

Fifth District   No. 5—89—0474

Opinion filed September 17, 1990.

Dan A. Shaffer, of Evans & Dixon, of Edwardsville, for appellant.

Floyd D. Peterson, Jr., of Law Offices of William W. Schooley, of Granite City, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiff-appellee was injured when she slipped and fell in a park-

ing lot, used in common by all patrons of a shopping mall, and owned by L.E.G., an Illinois corporation. Defendant, the operator of The Great Atlantic & Pacific Tea Company, commonly known as "A & P," leased space in the mall for its grocery store. Plaintiff had fallen in the parking lot, on a ramp, located at defendant's door. At trial, the jury rendered its verdict in favor of the plaintiff. We affirm.

Defendant argues that as a lessee, it did not owe plaintiff a duty to maintain in a reasonably safe condition the area where plaintiff fell, because under the terms of the lease, the landowner, not the lessee, had the duty to maintain and repair the parking lot.

The relevant provisions of the lease are:

(1) "The Lessor agrees to illuminate, landscape, keep clean, free of ice and snow, and in good repair (including striping of the parking lot) the common areas, including parking areas, driveways, service areas, walkways and parkways of this Shopping Center," and

(2) "That the Lessor has agreed to let and hereby does let and demise [*sic*] to the Lessee and the Lessee has agreed to take and hereby does take from the Lessor, for the purpose of a general merchandise business, the first floor in a store building known as Building No. 50 to be erected and constructed by the Lessor and a parking lot to be built adjacent thereto, upon the following described property owned by the Lessor, situated in the City of Decatur, County of Macon State of Illinois."

Defendant's first claim on appeal is that the circuit court erred when it, *in limine,* excluded the lease from evidence and compounded the error when it refused testimony that the landowner, not defendant, had repaired and maintained the parking lot. The circuit court excluded the evidence as irrelevant.

The admission of evidence is within the sound discretion of the circuit court and its ruling should not be reversed absent a clear showing of abuse. *People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.

Defendant argues that the evidence is relevant because its admission makes the existence of its duty to plaintiff less probable than it would be with the evidence excluded. See *People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295 (applying Fed. R. Evid. 401).

In making this argument, defendant relies on *Sydor v. Berger* (1947), 332 Ill. App. 138, 73 N.E.2d 924. *Sydor* is an abstract opinion. The use of abstract opinions and Rule 23 orders (107 Ill. 2d R. 23) as precedent consistently has been condemned by courts of review—condemnation so universal that no citation is required. All con-

demnation aside, it nevertheless is Illinois law that a lessee owes a duty to invitees to maintain premises in a reasonably safe condition and state of repair. *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534, citing *Jackson v. 919 Corp.* (1951), 344 Ill. App. 519, 101 N.E.2d 591.

■■■ Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *(People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.) The lease and any testimony pertaining to the lease, therefore, were irrelevant. The issue before the circuit court was the common law duty of the lessee, not that of the landowner. Whether the landowner also had a duty to the plaintiff, or whether defendant could seek contribution from the landowner was not at issue.

There is no doctrine of "partial duty." Duty either exists or does not, and if it does, it is not diminished in any way because someone else simultaneously owes a like duty. (See 65 C.J.S. Negligence §4(3), at 490 (1966).) Defendant had a duty to plaintiff. That duty is not to be diminished merely because the landowner also might have owed a like duty. The lease and the testimony that were excluded only could have been relevant to prove the landowner's duty; they were not relevant to show the nonexistence of defendant's duty under the holding of *Fitzsimons.*

■ The court has "inherent power" to admit or exclude evidence, and that power includes orders *in limine. (Department of Public Works & Buildings v. Roehrig* (1977), 45 Ill. App. 3d 189, 359 N.E.2d 752.) A reviewing court will not reverse a trial court's order allowing or excluding evidence *in limine* unless, in entering the order, the court manifestly abused its discretion. *People v. Williams* (1978), 60 Ill. App. 3d 529, 377 N.E.2d 367.

■ Since the testimony and pictures introduced at trial clearly indicate that the area where plaintiff fell was within the area of entry and exit to and from defendant's store and because of the holding in *Fitzsimons,* we see no abuse of discretion in excluding this evidence. See also *Steinberg v. Northern Illinois Telephone Co.* (1931), 260 Ill. App. 538.

■ The circuit court, therefore, did not err when it ordered the lease excluded *in limine,* and did not err in sustaining the objection to the testimony that was offered to prove that the landlord had repaired and maintained the parking lot in the past, because that evidence would prove only that the landlord also had a duty to plaintiff.

Defendant next claims that the circuit court erred when it denied

its motion to bar the testimony, in whole or in part, of a radiologist, Dr. G. Richard Locke, pursuant to Illinois Supreme Court Rule 220(b)(1) (107 Ill. 2d R. 220(b)(1)).

After she fell, plaintiff went to Dr. Thomas Griffith, who, in the course of his treatment, referred plaintiff to Dr. Locke for diagnostic X rays and a CT scan.

Dr. Locke testified to the results of the X rays and CT scan he took; and he further was allowed to review other X rays that originally had been read by Dr. Gooley, another radiologist, and to give his opinion about what was shown in the other X rays.

Dr. Locke testified:

"Q. Doctor, you have films here taken by Dr. Gooley also, is that correct, x-ray films?

A. That is correct.

Q. And have you had a chance prior to today, prior to the time you talked to me or anything to review those films?

A. She checked in at 12:50 p.m. and had the procedures performed that afternoon. Dr. Gooley—I interpreted the CT images at 4:00 p.m., and Dr. Gooley interpreted the CT the other images at 8:00 a.m. The reason I interpreted the temporomandibular joint images was, I mean the CT images, was that Dr. Gooley was older and felt uncomfortable with the CT imaging."

Dr. Gooley read the X rays, Dr. Locke the CT scan.

Dr. Locke was then asked by plaintiff's counsel to examine the X rays taken by Dr. Gooley and to interpret them and relate to the jury what they showed.

Dr. Locke testified:

"Q. Now on the left hand side, what pathology is depicted in the X-ray films ***?

A. In the normal study the mandibular cardyle with the mouth closed is in the temporomandibular fossa. With the mouth open the candyle subluxes anteriorly out of this fora.

Q. What do you mean?

A. This would give the patient a clicking sound or difficulty in moving the jaw."

This abnormality commonly is called TMJ and was not revealed in the CT scans taken by Dr. Locke.

Defendant claims that when Dr. Locke testified to the Gooley X rays he was not a treating physician, but rather was an expert within Rule 220, and since he had not been disclosed as an expert under Rule 220, that testimony should have been excluded. We reject this claim.

Rule 220(b)(1) provides:

"Disclosure.

\*\*\* In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party \*\*\*." 107 Ill. 2d R. 220(b)(1).

Rule 220(a)(1) defines an "expert" as:

"[A] person who \*\*\* possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion \*\*\* at trial." 107 Ill. 2d R. 220(a)(1).

Rule 220 bars the testimony of undisclosed experts. 107 Ill. 2d R. 220(b).

■■ A treating physician is not an expert witness within the meaning of Supreme Court Rule 220. *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525.

The issue presented here is whether Dr. Locke is a treating physician or an expert witness to the extent that he testified interpreting X rays taken by another physician.

●10 In deciding this issue, we return first to the theoretical underpinning of *Tzystuck*. The supreme court gave two bases for its holding in *Tzystuck*: (1) treating physicians are not retained to render an opinion at trial, but are consulted for treatment of a medical problem whether or not litigation is pending or contemplated; and (2) the committee comments to Rule 220 indicate that the drafters drew heavily upon Rule 26(b)(4) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 26(b)(4)). Federal courts interpreting Federal Rule 26(b)(4), as well as the advisory committee notes to Rule 26(b)(4), say that an expert who acquires information because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit rather than acquiring information because a lawsuit is contemplated or is pending should be treated as an ordinary witness. *Tzystuck*, 124 Ill. 2d at 235, 529 N.E.2d at 529.

■■ ■ As to the first basis, whether a physician is a treating physician or an expert depends on the physician's relationship to the case, not the substance of his testimony. A testifying expert is one whose relationship with a litigant arose principally because a litigant retained him to render an opinion at trial. It is the expert's relationship to the litigation, not the substance of the testimony, that makes him a testifying expert. (*Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 530 N.E.2d 1007; *Beiermann v. Edwards* (1990), 193 Ill. App. 3d 968,

550 N.E.2d 587.) A treating physician is one consulted for treatment. An expert is one consulted for testimony. (*Beaman v. Swedish American Hospital Association* (1989), 179 Ill. App. 3d 532, 534 N.E.2d 522; *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 533 N.E.2d 894.) It is clear that Dr. Locke was consulted for treatment. He was a physician to whom plaintiff had been referred for treatment.

The second of these two bases reveals the true theory of exclusion from disclosure as an expert, and two cases are examined to make the point: *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 531 N.E.2d 51, *appeal denied* (1989), 124 Ill. 2d 562, 535 N.E.2d 921; and *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 539 N.E.2d 801.

In both of these cases, occurrence witnesses, who were employed by a party, were allowed to give expert opinions even though they had not been disclosed as experts under Rule 220(b)(1). (107 Ill. 2d R. 220(b)(1).) In each case, the court reasoned that the identities of these witnesses were discoverable under Supreme Court Rule 201(b)(1) (107 Ill. 2d R. 201(b)(1)); therefore, there could be no surprise that these witnesses testified. The only surprise was that they gave expert opinions. Both courts held that neither a party nor an employee of a party who is intimately involved in the subject matter of the litigation need be disclosed as an expert witness pursuant to Rule 220(b)(1).

*Smith* and *Voyles* reveal the true basis of exempting from disclosure as an expert a witness who gets information as an actor or viewer of the occurrence. The basis is that there is little threat of surprise. (See *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 531 N.E.2d 51.) There is little threat of surprise simply because the opponent knows or has easy access to the identity of such a witness through discovery. A treating physician's identity is discoverable under Supreme Court Rule 201(b)(1) (107 Ill. 2d R. 201(b)(1)).

■ The purpose of Supreme Court Rule 220 is to accomplish full disclosure and to avoid surprise. There should be no surprise to an opponent when a treating physician testifies, even if that testimony is about matters that are within the scope of his expertise, but beyond the scope of his own acts that were done in furtherance of the treatment. In this case, defendant could not have been surprised by Dr. Locke taking the witness stand. The mere fact that he was called on to examine and give an opinion about X rays that he himself did not take also should not be surprising and, under these circumstances, should have been anticipated before trial and during discovery. The defendant would have known that these other X rays were in exist-

ence, would have known of the identity of Dr. Locke, and could have discovered Dr. Locke's opinion about these other X rays prior to trial. Therefore, since Dr. Locke's identity was known and since there could have been no surprise, the purpose of Rule 220 has been fulfilled.

Defendant last claims that the closing argument of the plaintiff misstated the law and that the court committed error when it overruled defendant's objection to that argument.

Plaintiff, in closing argument, said: "They have a duty to fill these holes folks. This isn't something they have a choice over." Defendant objected. The court said: "Overruled. That is the law. Please proceed."

The jury could not have been misled. Both plaintiff's counsel and the court made correct statements of the law. There was no error in the ruling, nor did the ruling and the brief comment, "that is the law," overemphasize any portion of the law or evidence. There was no prejudice.

The circuit court, therefore, is affirmed.

Affirmed.

GOLDENHERSH and RARICK, JJ., concur.