**2020 IL 125219**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125219)

ALEXIS DAMERON, Appellee, v. MERCY HOSPITAL AND
MEDICAL CENTER *et al.*, Appellants.


*Opinion filed November 19, 2020.*


JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Karmeier, Theis, and Michael J. Burke concurred in the judgment and opinion.

Justice Neville took no part in the decision.


## OPINION

¶ 1    Plaintiff, Alexis Dameron, was held in contempt for refusing to comply with the circuit court of Cook County's discovery order requiring her to disclose the report of David Preston, M.D., to defendants, Mercy Hospital and Medical Center; Cordia Clark-White, M.D.; Alfreda Hampton, M.D.; Natasha Harvey, M.D.; and

Patricia Courtney. Dameron initially disclosed Dr. Preston as a Rule 213(f)(3) controlled expert witness in her answers to defendants' interrogatories. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007). Dameron subsequently moved to redesignate Dr. Preston as a Rule 201(b)(3) consultant and shield Dr. Preston's report, which would otherwise be discoverable under Rule 213(f)(3), along with any other documents from a comparison electromyogram (EMG) and/or nerve conduction study (EMG study) Dr. Preston performed on Dameron. Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014); R. 213(f)(3) (eff. Jan. 1, 2007). Dameron filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), and the appellate court reversed, holding that Dr. Preston could be redesignated as a Rule 201(b)(3) consultant and that Dameron could shield Dr. Preston's report and EMG study from discovery. 2019 IL App (1st) 172338, ¶¶ 56-57. We allowed defendants' petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 2                                                    BACKGROUND

¶ 3        After Dameron underwent a robotic-assisted hysterectomy at Mercy Hospital and Medical Center, she brought a medical malpractice action against defendants. Dameron alleged that, due to improper positioning during surgery, she suffered damage to her femoral nerves.

¶ 4        During discovery, on May 30, 2017, Dameron filed her answers to defendants' interrogatories. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007). Relevant here, Dameron disclosed Dr. Preston as a controlled expert witness pursuant to Rule 213(f)(3). Dameron stated that Dr. Preston would "testify regarding the methods of performing and results of the comparison electromyogram and/or nerve conduction studies he will be performing on Alexis Dameron on June 1, 2017." Dameron represented that Dr. Preston would "also testify that he reviewed the results of Alexis Dameron's November 12, 2013 EMG & NCV tests performed at Mercy Medical Center." On June 2, 2017, Dr. Preston performed the EMG study on Dameron and prepared a report.

¶ 5        On July 27, 2017, Dameron e-mailed defendants, advising them that she was withdrawing Dr. Preston as a Rule 213(f)(3) controlled expert witness and considering him to instead be a nontestifying expert consultant pursuant to Rule 201(b)(3). See *id.*; Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014). Dameron also

informed defendants that she would not be producing any documents from Dr. Preston's review of the case or his examination.

¶ 6        On August 3, 2017, Dameron filed a motion to change Dr. Preston's designation from a Rule 213(f)(3) controlled expert witness to an expert consultant under Rule 201(b)(3). Dameron also sought to preclude discovery of facts and opinions known by Dr. Preston absent a showing of exceptional circumstances by defendants. Dameron maintained that Dr. Preston was not one of her treating physicians, explaining in her motion that she was "neither referred to Dr. Preston by any of her medical providers for treatment" nor provided "with any medical treatment for her complained-of injuries." Dameron asserted that her counsel had inadvertently disclosed Dr. Preston as a testifying expert witness.

¶ 7        Defendants did not file a written response to plaintiff's motion. According to Dameron's motion, defendants refused to schedule the depositions of her four other testifying expert witnesses until they received a copy of Dr. Preston's records.

¶ 8        On August 4, 2017, the circuit court denied Dameron's motion to designate Dr. Preston as a consulting expert and ordered her to produce his records. Dameron refused to do so. Accordingly, the court found Dameron in contempt and imposed a $100 fine. On September 6, 2017, the court denied Dameron's motion for reconsideration and reduced the fine to $1. In her motion for reconsideration, Dameron asserted that Dr. Preston was a retained Rule 213(f)(3) expert—not a treating physician—and that her counsel paid for his time and the EMG study. Dameron appealed the court's interlocutory orders denying her motions to designate Dr. Preston as a consulting expert and for reconsideration.

¶ 9        The appellate court reversed the circuit court's denial of Dameron's motion to designate Dr. Preston as a consultant and its order directing her to produce Dr. Preston's EMG study. 2019 IL App (1st) 172338, ¶¶ 56-57. First, because Illinois discovery rules and precedent do not address the issue of whether plaintiff could redesignate Dr. Preston as a consultant whose reports and opinions are shielded from discovery, the appellate court considered several federal cases. *Id.* ¶¶ 22-25. Specifically, the appellate court looked to *Davis v. Carmel Clay Schools*, No. 1:11-cv-00771-SEB-MJD, 2013 WL 2159476 (S.D. Ind. May 17, 2013), which in turn relied on *Securities & Exchange Comm'n v. Koenig*, 557 F.3d 736 (7th Cir. 2009), and its progeny for the rule that, once an expert's report is disclosed to the opposing

party, the expert no longer enjoys protection from discovery by the opposing party. 2019 IL App (1st) 172338, ¶¶ 23-25. However, the appellate court noted *Davis*'s conclusion that " 'it is clear that prior to producing the expert report, courts [have found] that a party can change a testifying expert to a non-testimonial expert without losing the protections' " from discovery, barring exceptional circumstances. *Id.* ¶ 25 (quoting *Davis*, 2013 WL 2159476, at *7). According to *Davis*, to fully disclose a testifying expert under Federal Rule of Civil Procedure 26, " 'both the disclosure of the name of the expert as well as the expert's required report is necessary.' " *Id.* (quoting *Davis*, 2013 WL 2159476, at *7). Until such time, " 'parties are entitled to change their minds and decide not to use an expert to testify at trial.' " *Id.* (quoting *Davis*, 2013 WL 2159476, at *7).

¶ 10    The appellate court concluded that "Dr. Preston's EMG study was protected by the consultant's work product privilege and subject to disclosure only upon a showing of exceptional circumstances." *Id.* ¶ 50.

¶ 11    The appellate court rejected defendants' arguments that, once Dameron disclosed Dr. Preston as a testifying expert, they were entitled to the results of the EMG study. *Id.* ¶¶ 27-42. Specifically, the court rejected defendants' assertion that Dr. Preston was a treating physician and thus Dameron implicitly consented to the release of any medical information pertaining to her injury placed at issue by virtue of her bringing the lawsuit. *Id.* ¶¶ 29, 31-32. Because Dameron was not referred to Dr. Preston for treatment and Dr. Preston was instead consulted for testimony, the court held that Dr. Preston was not a treating physician. *Id.* ¶¶ 28-32 (citing *Cochran v. Great Atlantic & Pacific Tea Co.*, 203 Ill. App. 3d 935 (1990)).

¶ 12    Next, the appellate court dismissed defendants' contention that Dameron's disclosure of Dr. Preston as an expert witness constituted a binding judicial admission. *Id.* ¶¶ 33-37. The court observed that Dameron had represented that the disclosure was inadvertent, that she had a duty under Rule 213 to supplement or amend any prior answer to interrogatories when new or additional information became available (Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2007)), and that she could still withdraw Dr. Preston as a witness (see *Taylor v. Kohli*, 162 Ill. 2d 91, 97 (1994)). 2019 IL App (1st) 172338, ¶ 35.

¶ 13    The appellate court also declined to find that Dameron's initial disclosure of Dr. Preston as a testifying expert witness waived any privilege to the EMG study. 2019 IL App (1st) 172338, ¶¶ 39-42.

¶ 14    The appellate court then considered defendants' argument that, even if Dr. Preston was a consultant, they were nevertheless entitled to the EMG study because it contained material and relevant facts. *Id.* ¶ 44. Defendants relied on *Shields v. Burlington Northern & Santa Fe Ry. Co.*, 353 Ill. App. 3d 506 (2004), where the First District held that a consulting expert's surveillance video showing his testing on the operation of a machine that injured the plaintiff was discoverable. 2019 IL App (1st) 172338, ¶¶ 44-46. The *Shields* court determined that, once the consultant's statements that "revealed his thought processes and theories" were deleted from the video, the video was not work product and thus not privileged from discovery. *Id.* ¶ 46.

¶ 15    The instant appellate court panel, however, found cases relating to production of surveillance tapes factually inapposite and instead relied on *Costa v. Dresser Industries, Inc.*, 268 Ill. App. 3d 1 (1994). 2019 IL App (1st) 172338, ¶¶ 48-49. In *Costa*, the Third District affirmed the circuit court's order denying the plaintiff's request to discover the identity of the defendants' consulting expert and results from any testing done upon the decedent's lung tissue sample. 268 Ill. App. 3d at 7-8. Because the expert was a consulting expert, his identity, opinions, and work product could only be discovered upon a showing of exceptional circumstances, which the plaintiff failed to make. *Id.* The instant appellate court panel explained that, because the EMG study was not included in the record on appeal, it could not "conclude that the material sought from Dr. Preston was of a purely concrete nature *** and that the production of the EMG study would not expose Dr. Preston's thought processes." 2019 IL App (1st) 172338, ¶ 50. Lastly, the court rejected defendants' argument that Dameron was attempting to subvert the legal process. *Id.* ¶ 52. Accordingly, the court held that defendants were not entitled to Dr. Preston's EMG study results, reversed the circuit court's order, and vacated its finding of contempt. *Id.* ¶¶ 53, 56-57.

¶ 16    This court allowed defendants' joint petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 17                                    ANALYSIS

¶ 18        As this case concerns matters of discovery, we briefly observe several controlling principles. Illinois recognizes a general duty to disclose. *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 15; Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014) (requiring "full disclosure *** [of] any matter relevant to the subject matter involved in the pending action" except as provided elsewhere in this court's rules). Pretrial discovery aims "to enhance the truth-seeking process, to enable attorneys to better prepare for trial, to eliminate surprise and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties." *D.C. v. S.A.*, 178 Ill. 2d 551, 561 (1997). Privileges, on the other hand, must be strictly construed because they serve interests beyond truth-seeking. *Klaine*, 2016 IL 118217, ¶ 15. That being said, privileges are deemed sufficiently important so as to excuse the general duty to disclose. *Id.* ¶ 28.

¶ 19        Discovery orders are not final and thus are not normally appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). However, "a contempt proceeding is an appropriate method for testing the correctness of a discovery order." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002); see also *Norskog*, 197 Ill. 2d at 69 ("When an individual appeals contempt sanctions imposed for violating, or threatening to violate, a pretrial discovery order, the discovery order is subject to review."). Questions of law are subject to *de novo* review. *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 43; see also *Reda*, 199 Ill. 2d at 54 (stating "the applicability of a statutory evidentiary privilege, and any exceptions thereto, are matters of law subject to *de novo* review").

¶ 20                                Treating Physician

¶ 21        We first consider defendants' argument that Dr. Preston was not an expert but Dameron's treating physician. According to defendants, when Dameron filed a medical malpractice suit and placed her physical condition at issue, she consented to defendants discovering pertinent medical information contained in Dr. Preston's report and EMG study. See *Palm v. Holocker*, 2018 IL 123152, ¶ 28. In other words, Dameron waived the physician-patient privilege between her and Dr. Preston, and thus the report and EMG study are discoverable on this basis.

- 6 -

¶ 22 Specifically, defendants assert that the appellate court misconstrued the distinction between a treating physician and an expert witness, as set forth in *Cochran*. See 203 Ill. App. 3d 935. Defendants also criticize the court's reliance on *Cochran* because it examined Rule 220, which has been replaced by Rule 213. Defendants note the significant difference between the disclosure requirements of Rule 213(f) and Rule 220. Further, defendants assert that the court's conclusion that Dr. Preston was not a treating physician conflicts with the fact that he, according to defendants, "provided medical care to the plaintiff in the form of an examination and an EMG study." Defendants criticize the court's holding, which was that Dr. Preston was not a treating physician because the record failed to show that he saw or treated Dameron for her injuries before he conducted the EMG study.

¶ 23 Defendants also point to Rule 215, which provides parties an avenue for obtaining an independent medical examination, for support. Ill. S. Ct. R. 215 (eff. Mar. 28, 2011). Pursuant to Rule 215, the objective test results are disclosed regardless of whether the party seeking a Rule 215 examination decides to call the examiner at trial. *Id.* Defendants observe that Rule 215(c) states that "[n]o examiner under this rule shall be considered a consultant." Ill. S. Ct. R. 215(c) (eff. Mar. 11, 2011).

¶ 24 We agree with the appellate court that Dr. Preston is not a treating physician. 2019 IL App (1st) 172338, ¶ 32. *Cochran* explains:

"[W]hether a physician is a treating physician or an expert depends on the physician's relationship to the case, not the substance of his testimony. A testifying expert is one whose relationship with a litigant arose principally because a litigant retained him to render an opinion at trial. It is the expert's relationship to the litigation, not the substance of the testimony, that makes him a testifying expert. [Citations.] A treating physician is one consulted for treatment. An expert is consulted for testimony. [Citations.] It is clear that Dr. Locke was consulted for treatment. He was a physician to whom plaintiff had been referred for treatment." 203 Ill. App. 3d at 940-41.

¶ 25 Simply because Dr. Preston evaluated Dameron and conducted an EMG study does not make Dr. Preston a treating physician. As the appellate court aptly observed, nothing in the record indicates that Dameron had been referred to Dr. Preston for treatment or that Dr. Preston had seen or treated Dameron in connection

with her alleged injuries before he conducted the EMG study. As noted in Dameron's motion for reconsideration, counsel paid for both Dr. Preston's time and the EMG study. Before Dameron decided to redesignate Dr. Preston as an expert consultant, Dameron represented in her answers to interrogatories that Dr. Preston would be called at trial to testify about an EMG study he had not yet conducted. Accordingly, Dr. Preston was consulted for testimony, and his relationship with Dameron arose because her counsel retained him for the purpose of providing testimony. See *id.*

¶ 26        We reject defendants' argument that *Cochran* is somehow not controlling because it examined Rule 220, which has been replaced by Rule 213. Defendants do not explain how "the significant difference between the disclosure requirements of Rule 213(f) and Rule 220" calls *Cochran* into doubt, and we thus entertain this undeveloped argument no further.

¶ 27                             Ability to Redesignate Dr. Preston as a
                                       Rule 201(b)(3) Consultant

¶ 28        We now address whether a party may change an expert's designation from a Rule 213(f)(3) controlled expert witness to a Rule 201(b)(3) expert consultant. See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007); R. 201(b)(3) (eff. July 1, 2014). If an expert serves as a controlled expert witness pursuant to Rule 213(f)(3), that expert's identity and address must be furnished to the other party along with the subject matter on which the witness will testify, the conclusions and opinions of the witness and the bases therefor, the qualifications of the witness, and any reports prepared by the witness about the case. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007); see Ill. S. Ct. R. 213, Committee Comments (rev. June 1, 1995) (paragraph (g)). On the other hand, if an expert serves as a Rule 201(b)(3) consultant, who will not testify at trial, "[t]he identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means." Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014).

¶ 29        Our rules do not expressly permit or prohibit a party from changing a witness's designation. As observed by the appellate court, Illinois caselaw is likewise silent on the precise issue, but this court has recognized that a party may abandon a

previously disclosed expert witness if that party provides the opposing party clear notice "at a time where the opposing party is still capable of acting on that awareness to his benefit," *i.e.*, "in reasonable time prior to trial." *Taylor*, 162 Ill. 2d at 97-98. *Taylor* observed that the purpose of Rule 220[1] was " 'to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries.' " *Id.* at 98 (quoting Ill. S. Ct. R. 220 (eff. Oct. 1, 1984) (committee comments to paragraph (d) of the former Rule 220).

¶ 30    Defendants argue that *Taylor* is distinguishable because the plaintiff sought to withdraw the expert at issue *after* the defendant had the opportunity to depose the expert and learn his opinions. Unlike in *Taylor*, defendants assert that Dameron is flouting the mandatory disclosure requirements governing expert discovery by not turning over Dr. Preston's opinions and the results of his examination and testing. See Ill. S. Ct. R. 213, Committee Comments (rev. June 1, 1995) (paragraph (g)) ("upon written interrogatories, a party must state the subject matter to be testified to, the conclusions, opinions and qualifications of opinion witnesses, and provide *all reports of opinion witnesses*" (emphasis added)).

¶ 31    We reject defendants' argument. Nowhere in *Taylor* did this court convey that such disclosure operated as a prerequisite to the plaintiff's ability to abandon the expert. Although Dameron seeks to go a step further than abandonment by redesignating Dr. Preston as a Rule 201(b)(3) consultant, we discern no reason to prohibit Dameron from doing so. Relevant here, the committee comments to Rule 213 make clear that the purpose of paragraph (f) "is to prevent unfair surprise at trial, without creating an undue burden on the parties before trial." Ill. S. Ct. R. 213, Committee Comments (adopted Mar. 28, 2002) (paragraph (f)). Here, Dameron alerted defendants of her intention to withdraw Dr. Preston as a testifying expert and redesignate him as a consultant on July 27, 2017. On July 31, 2017, Dameron amended and served her Rule 213(f)(3) disclosures upon defendants. Dameron filed a motion in the circuit court to redesignate Dr. Preston as a consultant on August 3, 2017. Notably, the trial date was scheduled for July 18, 2018. Thus, defendants had almost a year of advance notice that Dr. Preston would not be testifying as an expert witness. Accordingly, Dameron's redesignation would cause defendants no "unfair surprise *at trial*." (Emphasis added.) See *id.*; see also *Sullivan v. Edward Hospital*,

---

[1]As mentioned, Rule 220 related to expert witnesses and has been replaced by Rule 213.

209 Ill. 2d 100, 109 (2004) ("Rule 213 permits litigants to rely on the *disclosed opinions* of opposing experts and to construct their trial strategy accordingly." (Emphasis added.)).

¶ 32        Further, because Dameron never disclosed Dr. Preston's report to defendants, it cannot be said that defendants came to rely upon Dr. Preston being called as a witness or were prejudiced by his withdrawal. We, like the appellate court below, find federal case law dealing with Federal Rule of Civil Procedure 26(b)(4)(D)[2] compelling on this point. In *Davis*, the court held that a witness who, like here, had been disclosed as a testifying expert but had not yet produced a report could be redesignated as a consulting expert. 2013 WL 2159476, at *7. *Davis* relied on the Seventh Circuit case of *Koenig*, 557 F.3d at 744, and its progeny for the proposition that, once an expert's report is disclosed to the opposing party, that expert may no longer be shielded from discovery. *Davis*, 2013 WL 2159476, at *5-7. However, unlike these prior cases, *Davis* recognized that the expert's name had been disclosed but not the report. 2019 IL App (1st) 172338, ¶ 26. Still, *Davis* concluded that

> " 'both the disclosure of the name of the expert as well as the expert's required report is necessary to fully disclose a testifying expert under Fed. R. Civ. P. 26 and comply with that Rule. The Court also agrees that parties are entitled to change their minds and decide not to use an expert to testify at trial. *** Defendant did not disclose any testimony or expert opinions in the form of a report from [the expert witness]. Moreover, Plaintiff has shown no reliance upon Defendant's expert disclosure *** that would result in any prejudice to Plaintiff. As a result, the only means by which Plaintiff is entitled to conduct discovery of [the redesignated expert witness] is the 'exceptional circumstances' exception of Rule 26(b)(4)(D).' " *Id.* ¶ 25 (quoting *Davis*, 2013 WL 2159476, at *7).

Again, we note that defendants had almost a year of advance notice that Dr. Preston would not be testifying as an expert witness. Defendants could not have come to

<hr>

[2]Federal Rule of Civil Procedure 26(b)(4)(D) is the corresponding federal discovery provision to Illinois Supreme Court Rule 201(b)(3) (eff. July 1, 2014). See Ill. S. Ct. R. 201, Committee Comments (rev. June 1, 1995) (paragraph (b)) (referencing Federal Rule of Civil Procedure 26(b)(4)(B), which has now been renumbered to Federal Rule of Civil Procedure 26(b)(4)(D) (eff. Dec. 1, 2010)); *San Román v. Children's Heart Center, Ltd.*, 2010 IL App (1st) 091217, ¶ 23.

meaningfully rely on Dr. Preston's participation at trial as an expert witness; defendants never received Dr. Preston's report.

¶ 33    We add that defendants do not offer any reasoning to justify a rule whereby a party is irrevocably bound by its initial Rule 213(f) answers to interrogatories. Such a hard-and-fast rule would strain parties' obligation to supplement or amend prior answers to interrogatories whenever new or additional information becomes available. See Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2007); see also 2019 IL App (1st) 172338, ¶ 35 (noting also that Dameron would still have been entitled to abandon Dr. Preston as a witness after disclosing him as a testifying expert witness). Further, as noted in *Davis*, a party should be able to change its mind regarding who it presents as an expert witness where the requisite Rule 213(f)(3) report has not yet been disclosed.[3] See also *Ross v. Burlington Northern R.R. Co.*, 136 F.R.D. 638, 638-39 (N.D. Ill. 1991) ("Although plaintiff may have originally designated the witness as a testifying expert, plaintiff has the prerogative of changing his mind. Since plaintiff changed his mind before any expert testimony was given in this case, the witness never actually acted as a testifying expert witness.").

¶ 34    Because Dr. Preston was only partially disclosed as an expert witness, Dameron's timely redesignation of Dr. Preston as an expert consultant does not run afoul of our rules, offend the aims of discovery, or cause defendants unfair surprise. Thus, Dameron's redesignation of Dr. Preston is permissible.

¶ 35                                    Work Product

¶ 36    As mentioned, defendants maintain that, even if Dr. Preston can be redesignated as a Rule 201(b)(3) consultant whose report is shielded from discovery absent exceptional circumstances, Dameron must still turn over Dr. Preston's report and test results consisting of objective data that is not "core work product." Defendants direct our attention to Illinois Supreme Court Rule 201(b)(1) (eff. July 1, 2014), which provides:

---

[3]For these same reasons, we likewise decline to adopt defendants' argument, set forth in their reply brief, that Dameron's disclosure constituted a binding judicial admission that Dr. Preston is a controlled expert witness under Rule 213(f)(3).

"(1) *Full Disclosure Required.* Except as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party, including the existence, description, nature, custody, condition, and location of any documents or tangible things, and the identity and location of persons having knowledge of relevant facts. The word 'documents,' as used in Part E of Article II, includes, but is not limited to, papers, photographs, films, recordings, memoranda, books, records, accounts, communications and electronically stored information as defined in Rule 201(b)(4)."

¶ 37 Defendants assert that "Rule 201(b)(3) provides a narrow exception to Rule 201's 'full disclosure requirement' " in that it protects only opinion or core work product that is generated in preparation for trial and reveals the consultant's mental impressions, opinions, or strategy. Essentially, defendants contend that any objective factual information generated in the course of a medical test is devoid of any conceptual input. Discovery of this relevant information, according to defendants, would not run afoul of the work product doctrine. For this proposition, defendants cite several cases. See *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 196 (1991) (noting that Rule 201(b)(2) protects only "[o]pinion or 'core' work product, which consists of materials generated in preparation for litigation which reveal the mental impressions, opinions, or trial strategy of an attorney"); *Monier v. Chamberlain*, 35 Ill. 2d 351, 360 (1966) (stating that "[o]ther material, not disclosing such conceptual data but containing relevant and material evidentiary details must, under our discovery rules, remain subject to the truth-seeking processes thereof"); *Stimpert v. Abdnour*, 24 Ill. 2d 26, 31 (1962) (observing that the work product "rule does not protect material and relevant evidentiary facts from the truth-seeking processes of discovery"). In line with this argument, defendants try to distinguish *Davis* on the basis that that case did not hold that the defendants therein were allowed to conceal the objective evidence relied upon by the expert. Instead, defendants assert that *Davis* concerned only the discoverability of the withdrawn expert's opinions.

¶ 38 Defendants rely on two appellate court cases—*Shields* and *Neuswanger*—to support their argument that they are entitled to the factual information in the report and EMG study. See *Shields*, 353 Ill. App. 3d 506; *Neuswanger v. Ikegai America*

- 12 -

*Corp.*, 221 Ill. App. 3d 280 (1991). In both cases, the appellate court determined that videotapes made by a consulting expert did not constitute work product and thus were subject to disclosure. *Shields*, 353 Ill. App. 3d at 512 (concluding that "[b]ecause surveillance videotapes constitute substantive evidence and not work product within the meaning of discovery rules, we find that the trial court correctly ordered Burlington to produce any surveillance videotapes of plaintiff"); *Neuswanger*, 221 Ill. App. 3d at 286 (holding that "the truth-seeking interest in a civil case is sufficiently compelling to require disclosure of [the] consulting expert's videotaped field investigation without a showing of exceptional circumstances").

¶ 39    Also, according to defendants, no affidavit, privilege log, or *in camera* inspection suggests that Dr. Preston's report contains "opinion" or "core" work product. Defendants assert that the appellate court erred by shifting Dameron's burden of establishing that the report and study were privileged to defendants by holding that defendants failed to demonstrate exceptional circumstances.

¶ 40    We determine that the issue of whether defendants are entitled to the information in Dr. Preston's report and study is answered by our rules. Rule 201(b)(3), "Consultant," provides:

> "A consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial. The identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain *facts* or opinions on the same subject matter by other means." (Emphasis added.) Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014).

Rule 201(b)(3) speaks not only to a consultant's work product but also his or her identity and opinions. *Id.* Thus, framing the analysis as considering whether the information sought by defendants is "work product" is inexact. See *Midwesco-Paschen Joint Venture for the Viking Projects v. Imo Industries, Inc.*, 265 Ill. App. 3d 654, 667 (1994) (noting that *Neuswanger* "held that the work product doctrine should be interpreted in the same manner for consulting experts as it is for attorneys as set forth in Rule 201(b)(2)"); Ill. S. Ct. R. 201, Committee Comments (rev. June 1, 1995) (paragraph (b)) (explaining that Federal Rule of Civil Procedure

26(b)(4)(B) is the corresponding federal rule); see also Fed. R. Civ. P. 26(b)(4)(B), Notes of Advisory Committee on Rules—1970 Amendment ("These new provisions of subdivision (b)(4)" "reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine.").[4]

¶ 41    Rule 201(b)(3)'s definition of exceptional circumstances demonstrates that the rule protects more than ordinary work product. Exceptional circumstances are shown where "it is impracticable for the party seeking discovery to obtain *facts* or opinions on the same subject matter by other means." (Emphasis added.) Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014). If defendants were entitled to the underlying facts in the first instance, an inability to obtain facts on the same subject would never be a situation that would come to fruition.

¶ 42    Looking further, the committee comments to Rule 201(b)(3) emphasize the great level of protection the rule is meant to afford:

"Discovery of consultants as provided by Rule 201(b)(3) will be proper only in *extraordinary cases*. In general terms, the 'exceptional circumstances' provision is designed to permit discovery of consultants only when it is 'impracticable' for a party to otherwise obtain facts or opinions on the same subject. Discovery under the corresponding Federal provision, Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure, has generally been understood as being appropriate, for example, in cases in which *an item of physical evidence is no longer available* because of destructive testing and the adversary's consultant is the *only source of information about the item*, or in cases in which all of the experts in a field have been retained by other parties and it is not possible for the party seeking discovery to obtain his or her own expert." (Emphases added.) Ill. S. Ct. R. 201, Committee Comments (rev. June 1, 1995) (paragraph (b)).

¶ 43    First, the committee comments observe that discovery of consultants will only be had in "extraordinary cases." *Id.* Second, the comments reiterate that the rule contemplates protection of not only a consultant's opinions in the first instance but also the facts informing the consultant's opinions, *i.e.*, objective data. *Id.* Third, as

---

[4]The committee comments were revised June 1, 1995. This committee comment references Federal Rule of Civil Procedure 26(b)(4)(B). However, following a 2010 amendment, Federal Rule of Civil Procedure 26(b)(4)(B) was renumbered as Federal Rule of Civil Procedure 26(b)(4)(D) (eff. Dec. 1, 2010). The substance of the rule was not altered.

mentioned, the comments specifically point to the rule's federal counterpart, Federal Rule of Civil Procedure 26(b)(4)(D). *Id.* Federal Rule of Civil Procedure 26(b)(4)(D) provides:

"(D) *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."

The examples of exceptional circumstances cited by the committee comments to Rule 201(b)(3) demonstrate that Rule 201(b)(3) contemplates an interpretation more in line with federal law. See Ill. S. Ct. R. 201, Committee Comments (rev. June 1, 1995) (paragraph (b)). According to the committee, where an item of physical evidence would no longer be available due to destructive testing and a party could not obtain information about the destroyed item from any other source but the adversary's consultant who performed the destructive testing, exceptional circumstances exist to justify discovery of the information. *Id.*

¶ 44    Multiple policy considerations exist for protecting the information:

" '(1) the interest in allowing counsel to obtain the expert advice they need in order [to] properly evaluate and present their client's positions without fear . . .; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel its testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention.' " *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 6 (D.D.C. 2013) (quoting *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 227-28 (D.D.C. 2012)).

¶ 45      Accordingly, we hold that defendants are not entitled to Dr. Preston's report or the results of the EMG study without a showing of exceptional circumstances. Defendants strenuously assert that the information they seek is concrete factual data. Defendants, therefore, are requesting disclosure of what is expressly protected by the consultant's privilege provided in Rule 201(b)(3). See also *Appleton Papers, Inc. v. Environmental Protection Agency*, 702 F.3d 1018, 1024 (7th Cir. 2012) (observing that Rule 26(b)(4)(D) "shows that facts and opinions alike are protected and therefore not separable"). To the extent that *Neuswanger* and *Shields* employed the wrong analysis, they are hereby overruled.

¶ 46      Nor are we persuaded by defendants' argument that "the appellate court's finding that Dr. Preston's report was not discoverable—even though plaintiff failed to include it in the record—erroneously shifted the burden of proof of claiming a privilege to the party requesting an otherwise discoverable document." See *Klaine*, 2016 IL 118217, ¶ 15; *Krupp v. Chicago Transit Authority*, 8 Ill. 2d 37, 42 (1956) ("[O]ne who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege."). First, for the reasons we have explained, the report and study are not "otherwise discoverable" but are "discoverable only upon a showing of exceptional circumstances." Dameron filed a motion to designate Dr. Preston as a nontestifying expert consultant under Rule 201(b)(3) and to preclude discovery of facts and opinions known by him absent a showing of exceptional circumstances by defendants. Second, after noting that Dr. Preston was retained "to evaluate the nature and extent of Ms. Dameron's injuries and perform a comparison electromyogram and/or nerve conduction study on her," Dameron explained in her motion that she considered all the facts and opinions known by Dr. Preston to be privileged because he would not be testifying at trial. Thus, we are not sure what more Dameron need have shown to properly assert the privilege.[5] Because the documents at issue are privileged—and not subject to an ordinary work product analysis, which would separate conceptual data from factual data—defendants'

---

[5]We do not fault Dameron for not yet listing the documents at issue in a privilege log, in accord with Illinois Supreme Court Rule 201(n) (eff. July 1, 2014), where she first sought the circuit court's permission to redesignate Dr. Preston. Similarly, that Dameron represented that Dr. Preston was not going to be called as an expert witness is a fact supporting the privilege.

criticism that Dameron failed to include the report and study in the record on appeal is a moot point.

¶ 47 The appellate court also properly determined that defendants must first show exceptional circumstances to obtain Dr. Preston's report or the EMG study. 2019 IL App (1st) 172338, ¶ 50. Defendants chose not to argue in the alternative that exceptional circumstances exist. Defendants do, however, assert that Dr. Preston's examination and diagnostic study of Dameron "produced factual data directly related to plaintiff's alleged injuries—data that defendants cannot obtain other than from plaintiff, the only party with access to Dr. Preston's test results." Defendants criticize the appellate court's statement that,

> "[i]n the absence of the EMG study from the record on appeal, we cannot conclude that the material sought from Dr. Preston was of a purely concrete nature, as was the case in *Shields* and *Neuswanger*, and the production of the EMG study would not expose Dr. Preston's thought processes." *Id.*

¶ 48 On this point, we deviate from the appellate court's analysis. Again, the issue is not whether the information is of a concrete or conceptual nature but whether "it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means." Ill. S. Ct. R. 201(b)(3) (eff. July 1, 2014). Defendants do not contend, for example, that the results of Dr. Preston's EMG study would not be replicable if the same study were conducted by a different doctor. See, *e.g.*, *Costa*, 268 Ill. App. 3d at 8 (explaining that the plaintiff failed to demonstrate exceptional circumstances where she did not show it was impracticable to obtain opinions on what disease process caused her husband's death, she could do any testing she wished, there was enough tissue sample for testing, and she did not show that the tissue sample defendants received was unique); see also Ill. S. Ct. R. 215 (eff. Mar. 28, 2011) (stating that, if a court grants a party's request to order a party to submit to a physical examination by a licensed professional where the physical condition is at issue, that party will receive a written report of the examination along with the examiner's findings, test results, and the examiner's diagnosis and conclusions); see also *In re 'Agent Orange' Product Liability Litigation*, 105 F.R.D. 577, 581 (E.D.N.Y. 1985) (finding exceptional circumstances existed where certain information possessed by nontestifying experts could not be readily obtained from other sources). Defendants

also do not contend that Dameron's Rule 213 testifying experts are relying on Dr. Preston's report or study to form their opinions. Essentially, defendants present us with nothing more than a conclusory statement that they are unable to obtain the same information. Accordingly, we do not find that exceptional circumstances have been demonstrated.

¶ 49 Finally, defendants complain that the appellate court's holding promotes impermissible gamesmanship. See *Sullivan*, 209 Ill. 2d at 109-10 (finding the plaintiff committed a discovery violation by not disclosing all of her expert witness's opinions in her Rule 213 disclosure); *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 325 (1993) ("We strenuously disapprove of strategies which are purposefully designed to circumvent our discovery rules ***."). Defendants make much of the fact that Dameron attempted to redesignate Dr. Preston as a consultant only after Dr. Preston conducted his examination and completed his report.

¶ 50 We decline to speculate as to Dameron's motive in redesignating Dr. Preston as a consulting expert. Regardless, even if the report and results are detrimental to Dameron's position and she is trying to conceal this information, defendants can attempt to show that exceptional circumstances warrant disclosure of the information or request an independent examination pursuant to Rule 215. See Ill. S. Ct. R. 215 (eff. Mar. 28, 2011). This is exactly the procedure already contemplated by our rules.

¶ 51                                              CONCLUSION

¶ 52 Defendants are not entitled to Dr. Preston's report and EMG study on the basis that Dr. Preston served as Dameron's treating physician; Dr. Preston was consulted for the purpose of providing testimony. A party is permitted to redesignate an expert from a Rule 213(f) controlled expert witness to a Rule 201(b)(3) consultant in a reasonable amount of time before trial and where a report has not yet been disclosed. Here, Dameron properly withdrew Dr. Preston as a Rule 213(f) controlled expert witness almost a year before trial and redesignated him as a Rule 201(b)(3) consultant. Because Dr. Preston was properly redesignated as a Rule 201(b)(3) consultant, Dameron was not required to turn over the concrete factual data contained in Dr. Preston's report and EMG study. Rule 201(b)(3) protects not

only conceptual data but also factual information. Defendants made no attempt to show exceptional circumstances warranted disclosure of the data contained in the report and study.

¶ 53    For these reasons, we affirm the appellate court's decision reversing the circuit court's order denying Dameron's motion to redesignate Dr. Preston as a Rule 201(b)(3) consultant and ordering her to produce Dr. Preston's EMG study. Likewise, the contempt finding and $1 fine imposed against Dameron are vacated, and we remand the cause to the circuit court.

¶ 54    Appellate court judgment affirmed.

¶ 55    Circuit court order vacated.

¶ 56    Cause remanded.

¶ 57    JUSTICE NEVILLE took no part in the consideration or decision of this case.