2022 IL App (2d) 210466-U
No. 2-21-0466
Order filed June 8, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF ELENA SHTERN PINDIAK, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 17-D-1165 |
| | ) | |
| JOSEPH M. PINDIAK, | ) | Honorable |
| | ) | Timothy J. McJoynt, |
| Respondent-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Absent the relevant reports of proceedings, we had to assume that the trial court did not err when it awarded Elena only a portion of the attorney fees she requested. Therefore, we affirm.

¶ 2    Petitioner, Elena Shtern Pindiak, and respondent, Joseph M. Pindiak, engaged in post-decree litigation regarding the entry of Qualified Domestic Relation Orders and attorney fees relating to the entry of those orders. Elena appeals the trial court's ruling awarding her part of the attorney fees she requested under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(b) (West 2020)). She alternatively argues that the trial court

erred in granting Joseph a directed finding on her request for attorney fees under section 508(a) of the Act (750 ILCS 5/508(a) (West 2020)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The parties were married on July 19, 2006, and had one child. Their marriage was dissolved on December 6, 2018. The dissolution judgment incorporated the parties' marital settlement agreement (MSA). The MSA provided that Joseph was to pay maintenance to Elena of $1552.58 per month until March 4, 2022, based on his "base income" of $81,000 and her "base income" of $23,000. He was also to pay child support of $515 per month. The MSA further listed Joseph's four retirement accounts, which included his Allstate 401k. As pertinent here, the MSA provided:

> "The parties agree that following the entry of this Order, ELENA shall be awarded fifty percent (50%) of the marital portion of the all [*sic*] of JOSEPH'S retirement accounts free and clear of any right, title or interest of JOSEPH. *JOSEPH's non marital portion shall be defined as the balance of the accounts as of the date of marriage.* *** The parties shall cooperate in executing and entering a proper Qualified Domestic Relations Order (QDRO) *** [and] shall begin the process to execute the QDRO within sixty (60) days from the entry of this Agreement and shall share equally (50/50) any and all costs, including legal fees, associated in drafting, executing and filing of said QDRO by WFA Econometrics." (Emphasis added.)

¶ 5     On March 3, 2020, Joseph filed a motion for the entry of QDROs. For the Allstate 401k, his proposed QDRO stated that the first $61,567.28 belonged to Joseph, and the remainder of the account was to be equally divided between the parties.

¶ 6    A few days later, on March 6, 2020, Elena filed her own motion for entry of QDROs. She alleged that WFA Econometrics drafted QDROs pursuant to the MSA, but Joseph refused to abide by the MSA's terms and had drafted entirely different versions of the QDROs. Elena alleged that Joseph believed that he was entitled to more funds than agreed to in the MSA. Elena attached an exhibit that she alleged was the WFA Econometrics QDRO for the Allstate 401k, which stated that the first $29,731.28 belonged to Joseph and that the remainder of the account was to be equally divided between the parties. Elena alleged that Joseph had filed his petition without just cause, such that he should be ordered to pay her attorney fees and costs under section 508(b).

¶ 7    On June 1, 2020, Elena filed a petition for attorney fees under sections 508(a) and 508(b). She alleged that between December 7, 2018, and May 26, 2020, she had incurred 44.95 hours of attorney fees, totaling $13,129.75. On June 24, 2020, Joseph filed a petition for attorney fees and costs under the same statutory provisions.

¶ 8    On July 9, 2020, the trial court entered a QDRO for the Allstate 401k consistent with Elena's motion, with the first $29,731.28 as Joseph's property and the remainder divided equally.

¶ 9    Hearings on the cross-fee petitions took place over five days, on November 30, 2020, January 27, 2021, March 15, 2021, March 26, 2021, and May 5, 2021. During the hearing on March 15, 2021, the trial court granted Joseph's motion for a directed finding at the close of Elena's case, denying her request for fees under section 508(a). It stated:

"Dealing first with 508(a), and *** the argument here is that Joseph has greater assets, greater income than Elena; therefore, he must pay for Elena's attorney fees that she incurred in litigating this postdecree litigation. There's no case law that supports that there has to be equal economic footing. This certainly isn't an interim fee petition for predecree activity either, so there is no leveling of the playing field under these circumstances.

If I were to accept that because the incomes and assets were different that [Joseph] is automatically to pay for Elena's attorney fees in any litigation, I think it would be a chill to the process and would cause more attorney's fees hearing[s] than substantive hearings on substantive issues. That's not the law.

In addition to that, *In re the [M]arriage of Heroy*, 2017 Illinois 120205, the ability-to-pay element in the test for paying fees is; would paying the fees undermine his or her financial stability? That's what has to be shown. Because of the money she's received, I don't find that paying her fees, her own fees for this postdegree [*sic*] litigation under 508(a) would undermine her financial ability, therefore, as to 508(a) I'm granting the motion for directed finding.

Generally, the general rule is everyone pays for their own litigation. This is not— that's the American Rule, and it's certainly incorporated certainly by case law in the Illinois Marriage and Dissolution of Marriage Act.

Under some circumstances 508(a) fees might be due; I don't find that they're due in this case and there is no obligation to even it off or make it equal."

¶ 10    On March 26, 2021, the trial court granted Elena's motion for a directed finding on Joseph's claim for fees under section 508(a).

¶ 11    In the interim, on March 25, 2021, Elena filed an emergency motion to reconsider the directed finding in regard to her request for section 508(a) fees. The trial court denied the motion to reconsider on June 8, 2021, "for reasons stated on the record."

¶ 12    On May 19, 2021, Elena filed an updated attorney fee petition seeking $27,432.25, including $10,897.75 for the period of July 18, 2020, to January 26, 2021, and $2808 for the period of January 26, 2021, to March 3, 2021.

¶ 13    The trial court made its ruling on the request for section 508(b) fees during a hearing on July 13, 2021, stating as follows. Joseph's "unique interpretation of what" constituted the nonmarital portion of the Allstate 401k failed at trial and was ultimately rejected by the court, but the question at hand was whether his conduct needlessly delayed the court's proceedings. At one point during the hearing, he suggested that he may have had poor advice on this topic from former counsel. The dispute cost the parties substantial attorney fees to resolve, which sadly were well in excess of the dispute giving rise to litigation, being whether Joseph's nonmarital portion was approximately $61,000 or $29,000. "To say both parties fought for principal [*sic*] at times directly contradicts good business judgment, but this is what they did." The evidence showed that both sides initially tried to work it out, but they then quickly turned to litigation for relief, regardless of the cost of litigation. Also, the MSA called for the QDROs to be dealt with within 60 days, but the parties took more than two years to revisit the issue. The trial court was disregarding any billings before December 7, 2019, and it did not consider evidence about alleged nonpayment of maintenance or child medical expenses, as they were not relevant to the fee dispute issue. The parties had incurred substantial attorney fees regarding the QDRO issue but still elected to litigate their dueling fee petitions, "taking four to five days to litigate and now bringing the number of fees both sides incurred to an absurd amount based on again on the amount of the original dispute." "Both sides at times ** lost credibility with the Court at the hearing" in that "[d]irect testimony from [Elena] was impeaching," and respondent's testimony about his home's value was impeaching.

¶ 14    The trial court continued, "At the end of the day, [Joseph's] position that [the] nonmarital portion of the accounts involved was without merit and [caused] unnecessary delay to a portion of the QDRO fight that ensued in this case." Elena incurred needless fees on February 9, 2020, June

9, 2020, July 1, 2020, and July 9, 2020. She also incurred attorney fees for letters and phone calls between the attorneys between March and July 2020 as a result of Joseph's actions. The dispute was resolved on July 9, 2020, and all of the fees that the parties incurred after that day were a result of both parties filing dueling fees petitions and proceeding with a four-to-five-day hearing on the topic. The parties voluntarily chose to continue the litigation, and section 508(b) simply did not "come into play" as to those billings. The parties were seeking excessive fees that were "basically fees on fees," and the trial court did not approve of that.

¶ 15    The trial court awarded Elena attorney fees of $1400 for the four court appearances at a rate of $350 per hour, and $3150 for the correspondences and communications sent during the aforementioned time period. It therefore entered judgment against Joseph for $4550 of Elena's attorney fees. It stated that it found no conduct by Elena in the QDRO dispute that was for a wrongful purpose, and that was why "the 508(b) aspect of [Joseph's] fee petition was dismissed."

¶ 16    The trial court entered a written order to this effect on July 16, 2021. The written order also stated that the trial court was not awarding attorney fees for Elena's preparation and prosecution of her fee petition.

¶ 17    This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19                         A. Motion to Strike Joseph's Brief

¶ 20    Ordered taken with the case was Elena's motion to strike Joseph's *pro se* appellee's brief in its entirety, or portions thereof; Joseph has filed an objection to the motion. Elena argues that Joseph's brief violates Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), in many ways. Regarding Joseph's introduction, Elena points out that Rule 341(h)(2) states that the introductory paragraph shall state "(i) the nature of the action and of the judgment appealed from and whether

the judgment is based upon the verdict of a jury, and (ii) whether any question is raised on the pleadings and, if so, the nature of the question." Ill. S. Ct. R. 341(h)(2) (eff. Oct. 1, 2020). Elena argues that Joseph does not include this information but instead includes references to his *pro se* status, alleged facts from outside the record, and argument. Elena highlights that Joseph's argument section does not contain a single citation to authority, and she argues that he also presents arguments, conclusions, and assertions that are meritless and inconsistent with the judgment's plain language. Elena also discusses alleged deficiencies in Joseph's statement of jurisdiction, statement of facts, and conclusion.

¶ 21    In his objection, Joseph asserts that he cannot afford an attorney and followed the guidelines to the best of his abilities. He argues that his introduction has a similar format and tone as Elena's brief.

¶ 22    Joseph's introduction section of his brief is over three pages long, single spaced (see Ill. S. Ct. R. 341(a) (eff. Oct. 1, 2020)) ("text must be double-spaced")), and we agree with Elena that it does not contain the information specified in Rule 341(h)(2). Instead, it largely consists of alleged facts outside of the record and argument. We do not believe that the other sections of Joseph's brief are as deficient. It is true that his argument section does not cite authority, contrary to Rule 341(h)(7) (Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)), but it is short and has statements that are responsive to portions of the record and Elena's arguments. Therefore, we strike Joseph's introduction section and will disregard any improper facts and argument contained in the remaining sections of the brief. We recognize that Joseph is *pro se*, but parties who choose to represent themselves in Illinois courts must comply with the same rules as licensed attorneys, and they are held to the same standards. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78; see

also *Morse v. Donati*, 2019 IL App (2d) 180328, ¶ 16 (Illinois Supreme Court rules, including those pertaining to briefs, are not mere suggestions but rather have the force of law).

¶ 23                                             B.  Jurisdiction

¶ 24     We next address jurisdiction, as Joseph argues that we lack jurisdiction over this appeal because the trial court allegedly made its ruling on Elena's fee petition on July 13, 2021, and she filed a notice of appeal on August 16, 2021. Joseph has not cited any authority in support of his position, and the failure to cite authority generally results in forfeiture of an argument on appeal. See *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33 (a reviewing court is not a repository into which an appellant may dump the burden of argument and research, nor is it our obligation to act as an advocate, and the failure to clearly define issues and support them with authority results in forfeiture of the argument). However, as the appellate court has an independent duty to consider our jurisdiction and dismiss an appeal where jurisdiction is lacking (*In re Marriage of Salviola*, 2020 IL App 1st 182185, ¶ 36), we briefly address Joseph's argument.

¶ 25     The trial court made its oral ruling on Elena's request for section 508(a) fees on July 13, 2021, but it entered a written order memorializing its ruling on July 16, 2021. Under Illinois Supreme Court Rule 272 (eff. Jan. 1, 2018), if the trial court requires the submission of a written judgment to be signed or requires that the prevailing party draft the order, the judgment becomes final when the signed document is filed, which here was on July 16, 2021. Accordingly, Elena's notice of appeal was filed within the 30 days required. See Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 26     Joseph also argues that the deadline for appealing the trial court's rulings on Elena's request for fees under section 508(a) had passed by the time she filed her notice of appeal, as the trial court denied her request on March 15, 2021, and denied her motion to reconsider on June 8, 2021. However, in general, a judgment is final and appealable if all claims against all parties are

resolved by the judgment (*Chicago Architectural Metals, Inc., v. Bush Construction Co.*, 2022 IL App (1st) 200587, ¶ 35), which was not true of the ruling on the section 508(a) fees. Rather, Elena's appeal of the trial court's final and appealable judgment of July 16, 2021, provides us jurisdiction over that order as well as prior nonfinal orders and prior final and non-appealable orders leading to the judgment (see *In re Marriage of Reidy*, 2018 IL App (1st) 170054, ¶ 22), which includes the trial court's ruling on Elena's request for section 508(a) fees. There is therefore no jurisdictional impediment to this appeal.

¶ 27                                      C. Section 508(b) Fees

¶ 28    Elena's first argument on appeal is that the trial court erred in awarding her only $4550 of the "$27,932.25"[1] she incurred related to the QDRO orders after finding that Joseph had violated the MSA "without compelling cause or justification."

¶ 29     Section 508(b) of the Marriage Act states, in relevant part:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party. *** If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b) (West 2020).

---

[1] Elena's May 19, 2021, updated fee petition sought fees of $27,432.25.

Under section 508(b), if the trial court finds that a party's failure to comply with an order was without compelling cause or justification, it is required to award attorney fees to the other party. *In re Marriage of Patel & Sines-Patel*, 2013 IL App (1st) 112571, ¶ 143. The trial court should also "allocate fees and costs" if a hearing was the result of an improper purpose, such as harassment, unnecessary delay, or unnecessarily increasing the cost of litigation. 750 ILCS 5/508(b) (West 2020). Here, the trial court found that Joseph's conduct needlessly delayed proceedings, which falls under the category of "improper purpose." An attorney fee award under section 508(b) is subject to a reasonableness determination based on factors such as the time spent, the lawyers' ability, and the complexity of the work. *In re Marriage of Gattone*, 317 Ill. App. 3d 346, 360 (2000); see also *Northbrook Bank & Trust Co. v. Abbas*, 2018 Ill. App. (1st) 162972, ¶ 73 (when determining the reasonableness of attorney fees, the trial court should consider a variety of factors, including the nature of the case; the case's novelty and difficulty level; the attorney's skill and standing; the degree of responsibility required; the usual and customary charges for similar work; and the connection between the litigation and the fees charged). A trial court's award of attorney fees under section 508(b) will not be reversed absent an abuse of discretion. *In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 715 (2005). "A trial court abuses its discretion when its decision is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court." *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 49.

¶ 30    Elena argues that we need not afford the trial court's award any deference because it was not supported by the record, it was based on a complete misapprehension as to why she was litigating, and the trial court failed to assess all fees central to the dispute. Elena notes that questions of law are reviewed *de novo.* See *Dameron v. Mercy Hospital & Medical Center*, 2020 IL 125219, ¶ 19 (questions of law are subject to *de novo* review). We disagree with Elena's

proposed standard of review, as Elena essentially contests the trial court's determination of what constituted reasonable attorney fees as a result of Joseph's needless litigation of the QDRO issue, and this determination was within the trial court's discretion.

¶ 31     Citing *Fitzgerald v. Lake Shore Animal Hospital*, 183 Ill. App. 3d 665 (1989), Elena argues that in determining reasonable attorney fees, "the trial court shall line item the bill to identify and explain why certain fees are disallowed as being unreasonable and/or unnecessary." We note that Elena's attorney, Michael Canulli, made an identical argument in *In re Marriage of Kane*, 2016 IL App (2d) 150774. We stated that:

> "despite Canulli's assertion, *Fitzgerald* does not require the trial court to review the attorney's billing entries line-by-line and affirmatively strike those individual entries that it deems unreasonable, nor does *Fitzgerald* require the court to provide a 'specific explanation supporting each reduction.' No court has cited *Fitzgerald* for such propositions, and we decline to do so now. Though the *Fitzgerald* court remanded the matter for a 'ruling on each billing entry,' it is clear that the court directed the trial court to make such evaluations and rulings in light of the particular facts of that case." *Id.* ¶ 29.

The same analysis applies here, and we trust that Mr. Canulli will not continue to cite *Fitzgerald* to this court for a proposition that we have now disagreed with at least twice, including in a published opinion.

¶ 32     Elena argues that she incurred fees to enter the WFA Econometrics orders in accordance with the judgment, to defend against Joseph's motion to enter his proposed QDRO orders, to file and prosecute her fee petition, and to defend against Joseph's meritless fee petition. Elena contends that the trial court was therefore mistaken in stating that "both parties fought for principal [*sic*] at times" against "good business judgment," as she incurred fees to effectuate the judgment as

written. She cites *In re Marriage of Aleshire*, 273 Ill. App. 3d 81, 84 (1995), where the court stated that the husband "must be held accountable under section 508(b) for all of the fees [the wife] incurred in bringing her petition." She argues that Joseph should similarly be held accountable for all of her fees, as Joseph litigated in bad faith and the trial court entered her WFA Econometrics QDRO orders.

¶ 33    We are hampered in our review of Elena's argument by a lack of reports of proceedings. Hearings on the parties cross-fee petitions took place on November 30, 2020, January 27, 2021, March 15, 2021, March 26, 2021, and May 5, 2021. Elena has provided a few pages of transcripts from the March 15, 2021, hearing, limited to Joseph asking for a directed finding on Elena's section 508(a) attorney fees and the trial court's grant of the motion. The next transcript she includes is the trial court's July 13, 2021, ruling on her request for section 508(b) fees.

¶ 34    Elena recognizes in her brief that, as the appellant, she has the duty to provide a sufficiently complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Elena argues that it can be seen from her financial affidavit that she did not have the financial ability to pay for five days of reports of proceedings. She argues that, however, the record is sufficient to address the issues on appeal because "the record is very detailed and otherwise complete regarding" the five days of hearings, including numerous exhibits showing the parties' respective financial situations.

¶ 35    It is contradictory to on the one hand litigate fee petitions for five days and then on the other hand state that the testimony adduced at the hearing was not relevant to the trial court's ruling. Although we are able to see the exhibits, we do not have the benefit of reviewing testimony regarding the exhibits, including cross-examination, nor do we know what other testimony was provided. Elena represents that she cannot afford to pay for the transcripts, but she did not submit an application for waiver of court fees to allow her to obtain free or reduced-price transcripts.

¶ 36 Here, the trial court found that as a result of Joseph's actions, Elena incurred needless attorney fees for hearings on February 9, 2020, June 9, 2020, July 1, 2020, and July 9, 2020, and for letters and phone calls between the attorneys between March and July 2020. It stated that after the dispute was resolved on July 9, 2020, the additional attorney fees were excessive and arose from dueling fees petitions and multiple days of hearings on the fee petitions. As we lack the reports of proceedings from the hearings, we must resolve any doubts arising from the lack of a complete record against Elena, including presuming that the trial court's order was entered in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92. We therefore cannot say that it abused its discretion in its attorney fee award.

¶ 37 Elena further argues that, as a matter of law, the trial court erred in refusing to award her any fees she incurred in the preparation and prosecution of her fee petition. Elena argues that once the trial court found that Joseph had violated the judgment "without compelling cause or justification,"[2] this triggered a mandatory fee award for the preparation and prosecution of her section 508(b) petition. She cites *In re Marriage of Powers*, 252 Ill. App. 3d 507, 513-14 (1983), where the appellate court held that section 508(b) "allows awards of attorney fees for maintaining any proceeding under the Act," including the award of attorney fees for the time spent preparing the fee petition. It stated that the "establishment of such right is important to further the Act's goal of mitigating harm to spouses and children from dissolution proceedings," and it held that the trial court did not abuse its discretion in awarding such attorney fees. *Id.* at 514.

---

[2] As stated, based on the trial court's findings, Joseph's actions fell in the category of "improper purpose."

¶ 38   Contrary to Elena's argument, *In re Marriage of Powers* did not hold that the fees for preparation of fee petitions must be awarded, but rather that section 508(b) allows for them to be awarded. Here, the trial court was very critical of the fees incurred as a result of litigating the fee petition. We note that Elena's attorney fees were $13,129.75 when she filed her fee petition on May 26, 2020; the trial court entered the QDRO for the Allstate 401k on July 9, 2020; after litigating the fee petitions, on May 19, 2021, Elena sought attorney fees of $27,432.25; and in her brief, she states that her total fees for the trial court proceedings were $37,518.75 (over 2.5 times her May 26, 2020, fee petition). Without being able to review the hearings on the fee petitions, we must presume that the trial court's ruling was correct. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 39                     D. Section 508(a) Fees

¶ 40   Elena alternatively argues that the trial court erred in making a directed finding denying her petition for attorney fees under section 508(a). As pertinent here, section 508(a) states: "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." 750 ILCS 5/508(a) (West 2020).

¶ 41   Section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2020)) permits a defendant to move for a directed finding in a bench trial at the close of the plaintiff's case. In ruling on a section 2-1110 motion, the trial court must first determine whether the plaintiff has established a *prima facie* case as a matter of law by providing evidence on every element essential to the cause of action. *Id. Bank of America v. WS Management, Inc.*, 2015 IL App (1st) 132551, ¶ 97. If the trial court determines that the plaintiff failed to meet this burden and grants the directed finding on this ground, our review is *de novo. Id.* If the plaintiff has presented a *prima facie* case, the court must then consider and weigh the totality of the evidence to determine whether the *prima*

*facie* case survives. *Id.* If the court concludes that it does not, we apply a manifest-weight-of-the-evidence standard to the grant of the directed finding. *Id.*

¶ 42    Elena argues that she presented some competent evidence on every element of her section 508(a) claim. However, the trial court appears to have weighed the evidence (see *supra* ¶ 9), meaning that it granted the motion in the second step, and we will not reverse its ruling unless it is against the manifest weight of the evidence.

¶ 43    Elena cites various exhibits in arguing that Joseph has a much greater income and assets than she does, and that she does not have the ability to pay over $30,000 in attorney fees, much less pay them without depleting her capital resources and undermining her economic stability. She asserts that the trial court did not explain how or from what resources she could pay the fees, and it ignored the gross financial disparity between the parties.

¶ 44    As with Elena's section 508(b) argument, we are unable to assess the merits of her argument because we lack the reports of proceedings from which the trial court's ruling was derived. We also do not have the report of proceedings from the June 8, 2021, hearing at which the trial court denied Elena's motion to reconsider its ruling on her request for section 508(a) fees "for reasons stated on the record." Therefore, we have no basis to hold that the trial court's grant of a directed finding was against the manifest weight of the evidence. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 45    Based on our affirmance of the trial court's rulings, we do not address Elena's arguments that we should award her attorney fees for her appeal.

¶ 46                                III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the Du Page County circuit court.

¶ 48    Affirmed.